No. 99-191

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 16 [57 St.Rep. 89]

298 Mont. 101

994 P. 2d 1105

ROXY SHILHANEK, an individual, COREY

SHILHANEK, a minor by and through his guardian

ad litem, TIMOTHY SHILHANEK, RYAN

SHILHANEK, a minor by and through his guardian

ad litem, TIMOTHY SHILHANEK, and TIMOTHY

SHILHANEK, an individual,

Plaintiffs and Respondents,

v.

D-2 TRUCKING, INC., a corporation,

KRZYSZTOF CEKLARZ, an individual, and

ADAM CWIKLA,

Defendants and Appellants,

and

CANAL INSURANCE COMPANY,

Intervenor and Cross-Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Don M. Hayes, Brown Law Firm, P.C.; Billings, Montana

For Respondents:

Joe B. Cordileone, Law Offices of Joe B. Cordileone;

Billings, Montana

A. Clifford Edwards, Edwards Law Firm; Billings, Montana

For Cross-Appellant:

Lon J. Dale, Milodragovich, Dale, Steinbrenner & Binney, P.C.;

Missoula, Montana

Submitted on Briefs: August~12, 1999

Decided: January 20, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1.D-2 Trucking, Inc., Krzysztof Ceklarz, and Adam Cwikla (Appellants) appeal from several post-verdict orders entered

by the District Court regarding collateral source offsets, satisfaction of the punitive damage award, and credit for payments

deposited with the federal district court. In addition, Canal Insurance Company (Canal) appeals pursuant to Rule 5(3),

M.R.App.P., from the District Court's order dated February 17, 1999, allowing it to intervene as a party. We affirm.

¶2. The issues presented on appeal are as follows:

¶3. Did the District Court err when it denied the Appellants' request for an offset from the judgment for money paid to

the Shilhaneks by a collateral source?

¶4. Did the District Court err when it denied the Appellants' request for an offset from the judgment for money held on

deposit with the federal district court representing payment of medical expenses incurred by Roxy and Corey Shilhanek?

¶5. Did the District Court abuse its discretion when it denied the Appellants' request to allocate money tendered to the

Shilhaneks toward the punitive damage award and the Appellants' request to require the Shilhaneks to file a corresponding

satisfaction of judgment with respect to the punitive damage award?

¶6. Did the District Court abuse its discretion when it allowed Canal to intervene and declared that Canal shall be

treated as any other party to this action?

FACTUAL AND PROCEDURAL BACKGROUND

¶9. On May 4, 1997, Roxy Shilhanek and her youngest son, Corey, were involved in a vehicle accident that occurred at the

intersection of South Billings Boulevard and the on-ramp to the eastbound I-90 freeway in Billings, Montana. On August 11,

1997, the Shilhanek family brought an action against the owners and the driver of the truck involved in the accident for

damages they sustained as a result of the accident. At the conclusion of the trial held July 20-24, 1998, the jury returned the

following verdict in favor of the Shilhaneks:

Roxy Shilhanek $2,747,000

Tim Shilhanek $ 100,000

Corey Shilhanek $ 25,000

Ryan Shilhanek $ 25,000

Punitive Damages $ 220,000

¶10.Following the jury's verdict, the Appellants filed a motion on August 19, 1998, pursuant to §§ 27-1-307 and -308,

MCA (1997), requesting that the Shilhaneks be required to disclose all collateral sources and potential sources of offsets or

credits against the judgment, along with the existence of any subrogation claims. In addition, the Appellants requested that a

credit or offset against the judgment in favor of Roxy and Corey Shilhanek be given for monies deposited with the federal

district court, representing past medical expenses incurred by Roxy and Corey Shilhanek. The Appellants also requested that

a credit or offset against the judgment in favor of Roxy Shilhanek be given for advance payments that had been made. The

Appellants concluded their motion by requesting the District Court to conduct a hearing as required by § 27-1-308, MCA

(1997), regarding any collateral source or offset issues not agreed upon by the parties.

¶11.The District Court scheduled a hearing for October 2, 1998, and requested the parties to make a good faith effort to

stipulate to the collateral sources and offsets prior to the hearing. The Shilhaneks filed a brief in opposition to the hearing on

the basis that the requirements for such a hearing pursuant to § 27-1-308, MCA (1997), had not been met. The Appellants

replied by reiterating the arguments set forth in their initial brief and by pointing out that such a hearing was necessary to

determine the existence of any collateral sources. The District Court concluded that a determination of offsets for collateral

sources should be conducted at this time in the event the Shilhaneks are able to collect their judgment in the future.

¶12.After the hearing, the parties submitted proposed findings of fact and conclusions of law pursuant to the District Court's

request. On October 9, 1998, the District Court entered its order denying the Appellants' motion for offset of collateral

sources without prejudice. The District Court based its decision on the language of the applicable statute, which requires that

the injured party will be fully compensated for his damages prior to any reduction. See § 27-1-308(1), MCA (1997).

¶13.The Shilhaneks argued that the insurance proceeds, which amounted to a little over $1 million, and the assets of the

Appellants would be exhausted long before they could recover the full judgment in excess of $3 million. Thus, the Shilhaneks

concluded that only upon actual payment of the judgment would they be fully compensated. Conversely, the Appellants

contend that so long as the jury does not make a finding of comparative negligence on the part of the Plaintiffs, the jury's award

constitutes full compensation. Faced with the question of whether the mere award of damages or the actual payment of the

award fully compensates a plaintiff, the District Court concluded that it seems all too clear the legislature contemplated actual

payment to an injured party before he could be considered "fully compensated." Accordingly, the District Court determined

that until the Shilhaneks will be fully compensated for their injuries, the Appellants are not entitled to a collateral source hearing

or a reduction in the Shilhaneks' recovery.

¶14.On September 28, 1998, the Appellants delivered to the Shilhaneks' counsel, checks representing the amount of the

punitive damage award plus interest through that date, along with a request that a satisfaction of judgment for the punitive

damage award plus interest be entered. The Shilhaneks' counsel refused tender and returned the checks and refused to enter

satisfaction of the punitive damage award. On October 8, 1998, the Appellants moved the District Court for an order

directing the deposit of funds with the clerk of court, which represents the punitive damage award, and compelling the

Shilhaneks to enter a satisfaction of judgment with respect to the punitive damage award. Once the matter had been fully

briefed by the parties, the District Court entered its order denying the Appellants' motion on November 6, 1998. The District

Court noted that this was a discretionary issue for the court, cited a lack of basis in the law for the Appellants' request, turned

to basic issues of fairness, and concluded that the equities were not in favor of such a ruling given the chasm between the

damages awarded and the damages recoverable. The District Court went on to state that it appears highly unlikely that the

Shilhaneks will ever receive even half of their damages and the court will not make the situation worse by subjecting roughly a

fifth of the available recovery to taxation.

¶15.On October 14, 1998, the Appellants filed a motion for reconsideration of the District Court's October 9, 1998, order

denying their motion for offset of collateral sources on the basis that it failed to address two key matters: payment made to

Tim Shilhanek by State Farm Insurance Company (State Farm) pursuant to his underinsured-motorist coverage; and money

placed on deposit with the federal district court, which represents payment of medical expenses incurred by Roxy and Corey

Shilhanek. Appellants assert that they should be given credit against the judgment for the money paid by State Farm to Tim

Shilhanek. In addition, Appellants request the District Court to grant them a partial satisfaction of judgment for the money

currently on deposit with the federal district court. The Shilhaneks opposed the motion based on the fact that they will not be

fully compensated for their injuries.

¶16.On November 15, 1998, the District Court entered its order denying the Appellants' request for an offset for money paid

to Tim Shilhanek by State Farm. The District Court noted that while the jury had awarded Tim Shilhanek $100,000 in

compensatory damages, it had also awarded $220,000 in punitive damages, which are properly allocated

evenly among the

four Plaintiffs. Based on its ruling denying the Appellants' request for satisfaction of the punitive damage award, the District

Court determined that none of the Shilhaneks will be fully compensated.

¶17.With regard to the Appellants' request for a credit for the amount of money deposited with the federal district court, the

District Court requested the parties to brief the issue of whether the money deposited with the federal district court constitutes

a voluntary payment under § 26-1-701, MCA (1997). The District Court was seeking a reason why it should not wait for the

federal district court to decide who has a right to those funds.

¶18.On November 19, 1998, the Appellants filed a motion for reconsideration of the District Court's order of November 6,

1998, denying Appellants' motion to compel satisfaction of the punitive damage award. The primary basis cited for the

Appellants' motion for reconsideration was the discovery of statutory authority, § 28-1-1106, MCA (1997), supporting the

designation of funds for the payment of punitive damages. It was Appellants' position that the referenced statute provided

them with the power to designate that a payment be credited to a particular obligation. The Shilhaneks responded by pointing

out that the Appellants' reliance upon the referenced statute was misplaced as it dealt with contractual obligations and not

judgments.

¶19.The District Court stood by the reasoning of its previous order and denied the Appellants' motion for reconsideration on

January 19, 1999. The District Court stated that the Appellants had not persuaded the court that their newly cited statutory

authority applies to this situation. The District Court concluded that § 28-1-1106, MCA (1997), governs a debtor's

performance when he is under several obligations and has no applicability to the judgment at issue. The District Court noted

that the rules applicable to obligations arising from judgments are found in Title 25, MCA. In closing, the District Court

pointed out that the only issue remaining was the Appellants' request for a credit for funds deposited with the federal district

court.

¶20.Pursuant to the District Court's order of November 15, 1998, the parties submitted additional briefs concerning the

money on deposit with the federal district court. The Appellants asserted that they initiated an interpleader action in federal

district court and deposited the funds for medical expenses incurred by Roxy and Corey Shilhanek pursuant to Ridley v.

Guaranty National Insurance Company (1997), 286 Mont. 325, 951 P.2d 987, since the Shilhaneks' health insurance

provider had paid many of the expenses incurred. The Appellants claimed that Ridley did not address to whom or how such

expenses were to be paid and that the payment should be classified as a voluntary payment under § 26-1-701, MCA (1997).

The Shilhaneks responded by asserting that the Ridley decision required the Appellants to pay the medical expenses directly

to the injured Plaintiffs and that the Appellants should not be given credit for a voluntary payment by tying up the funds in

federal court.

¶21.On January 20, 1999, the District Court issued its order denying, without prejudice, the Appellants' motion for

reconsideration of the court's October 9, 1998, order, regarding Appellants' request for a credit for money deposited with the

federal court, pending the eventual decision of the federal court. The District Court reasoned that the voluntary payment

scheme is supposed to expedite the handling of claims, not stop them in their tracks. The District Court went on to state that it

would not intervene in the business of the federal court to untangle the web the Appellants' insurer had woven.

¶22.On February 1, 1999, Canal filed a motion to intervene pursuant to Rule 24, M.R.Civ.P., for the purpose of filing the

attached Rule 52(b), M.R.Civ.P., motion to amend the District Court's order of January 20, 1999. In its brief in support of

the motion to intervene, Canal requested the District Court to allow it to intervene for the limited purpose of providing factual

information to correct errors of fact. The Shilhaneks agreed that Canal should be allowed to intervene, but requested that

Canal be allowed to intervene in the action as a full party and not for the limited purpose of attacking the District Court's

January 20, 1999, order. In its February 17, 1999, order, the District Court acknowledged that Rule 24 (b), M.R.Civ.P.,

allows for intervention when an applicant's claim or defense and the main action have a question of law or fact in common.

The District Court sided with the Shilhaneks and allowed Canal to intervene in the action, but declared that Canal shall be

treated as any other party to this action.

¶23.Upon filing of the District Court's order allowing Canal to intervene, the Rule 52(b), M.R.Civ.P., motion to amend and

brief in support that had been previously lodged with the court were filed on February 19, 1999. On the same date, Roxy and

Tim Shilhanek filed a cross-claim against Canal for violations of the Montana Unfair Practices Act. On February~22, 1999,

counsel for Canal wrote to counsel for the Shilhaneks and advised that a conflict had arisen as a result of the Shilhaneks'

cross-claim against Canal and that Canal would need to obtain different counsel.

¶24.On February 24, 1999, the Appellants filed a Notice of Appeal from the following orders entered by the District Court:

Order and Memorandum on Collateral Sources dated October 9, 1998;

Order and Memorandum Re: Motion to Compel Satisfaction of Punitive Damage Award dated November 6, 1998;

Order and Memorandum dated November 15, 1998;

Order and Memorandum Re: Reconsideration of Order Denying Motion to Compel Satisfaction of Punitive Damages dated

January 19, 1999; and

Order and Memorandum Re: Money Interpled in Federal Court dated January~20, 1999.

In light of the recent filings, on March 4, 1999, the Shilhaneks filed a motion to stay and suspend any required response to

Canal's motion to amend pending the District Court convening a status and scheduling conference. On March 5, 1999, new

counsel for Canal filed a Notice of Representation and Response to Request for Status Conference and Scheduling

Conference. On March 8, 1999, original counsel for Canal filed a notice of appeal pursuant to Rule 5(3), M.R.App.P.,

concerning the District Court's order of February~17, 1999, allowing Canal to intervene as a party.

¶25. On March 25, 1999, original counsel for Canal filed an Amended Notice of Appeal, which included reference to Rule

54, M.R.App.P. Accordingly, this Court addresses the issues raised on appeal by the Appellants and Canal.

STANDARD OF REVIEW

¶26. We review a district court's conclusions of law to determine whether the district court's interpretation of the law is

correct. See Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citation

omitted). In addition, the standard of review for discretionary trial court rulings is abuse of discretion. See May v. First Nat'l

Pawn Brokers, Ltd. (1995), 270 Mont. 132, 134, 890 P.2d 386, 388. "The test for abuse of discretion is whether the trial

court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial

injustice." Jarvenpaa v. Glacier Elec. Coop., Inc., 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13 (citation

omitted).

ISSUE 1

¶27. Did the District Court err when it denied the Appellants' request for an offset from the judgment for money paid to the

Shilhaneks by a collateral source?

¶28. Appellants assert they are entitled to an offset from the judgment in favor of the Shilhaneks for

payments made by State

Farm to the Shilhaneks pursuant to the terms of their underinsured-motorist coverage. Appellants rely on § 27-1-308, MCA

(1997), in support of their assertion. Appellants contend that § 27-1-308, MCA (1997), does not require the verdict to

actually be paid in order for the Plaintiffs to be fully compensated and since the jury found there was no comparative

negligence on the part of the Shilhaneks, their awards reflect full compensation for their damages. The Shilhaneks assert that

the verdict is simply a determination of the amount of money it will take to fully compensate the Shilhaneks and they will not be

fully compensated until such time as the Appellants actually pay the judgment in excess of $3.1 million. Following a hearing on

the issue, the District Court concluded that the legislature contemplated actual payment to an injured party before he could be

considered fully compensated.

¶29.The statute regarding collateral source reductions provides as follows:

Collateral source reductions in actions arising from bodily injury or death-subrogation rights. (1) In an action arising

from bodily injury or death when the total award against all defendants is in excess of $50,000 and the plaintiff will be fully

compensated for his damages, exclusive of court costs and attorney fees, a plaintiff's recovery must be reduced by any

amount paid or payable from a collateral source that does not have a subrogation right.

Section 27-1-308(1), MCA (1997) (emphasis added). Prior to any reduction, two requirements must be met. The first

requirement under this statute is that the total award against all defendants must be in excess of $50,000. See § 27-1-308(1),

MCA (1997). After dividing the punitive damage award among each of the four Plaintiffs equally and adding it to their

compensatory damage awards, this requirement is satisfied.

¶30.The second requirement under this statute is that the plaintiff will be fully compensated. See § 27-1-308(1), MCA

(1997). While the statute does not define "fully compensated," it is clear from the plain language of the statute what the

legislature intended. As the District Court correctly noted, the statute provides that it is a plaintiff's recovery that must be

reduced by any amount paid or payable from a collateral source without a subrogation right, not a plaintiff's award. In this

case, there was only $1,000,000 in insurance proceeds available to satisfy the Shilhaneks' judgment of $3,117,000. In

addition, the entire $1,000,000 has not been paid to the Shilhaneks. Approximately one-fourth of the proceeds has been

deposited with the federal district court and is the subject of an interpleader action involving the Shilhaneks and their health

insurance provider.

¶31.To allow the Appellants an offset against the remaining $750,000 in insurance proceeds, clearly frustrates the intention of

the collateral source statute. As the District Court pointed out, the collateral source statute exists to ensure that a plaintiff's

eventual recovery has a ceiling no higher than the full amount of the award, minus appropriate collateral offsets. This is

illustrated by the legislature's use of the word "recovery" as opposed to the word "award" when referring

to reduction for

payments made by a collateral source.

¶32.Section 27-1-308(1), MCA (1997), mandates a reduction from the plaintiff's recovery for payments made by a

collateral source when the award against the defendants is in excess of $50,000 and when the plaintiff will be fully

compensated for his damages. Based on the plain language of the statute, the District Court properly determined that the

legislature contemplated actual payment to an injured party before they could be considered "fully compensated." If an injured

party receives an award of monetary damages against a judgment-proof defendant, it cannot be said that the injured party will

be fully compensated. Thus, the phrase "will be fully compensated" indicates that full payment must be made.

¶33.Since the Appellants have only paid approximately $750,000 toward the judgment rendered in favor of the Shilhaneks in

excess of $3,000,000, the second requirement under § 27-1-308(1), MCA (1997), that the plaintiff will be fully

compensated, has not been met. Thus, we conclude that the District Court did not err when it denied the Appellants' request

for a collateral source reduction from the judgment in favor of the Shilhaneks.

ISSUE 2

¶34.Did the District Court err when it denied the Appellants' request for an offset from the judgment for money held on

deposit with the federal district court representing payment of medical expenses incurred by Roxy and Corey Shilhanek?

¶35.Appellants argue that they are entitled to a reduction of the damages awarded to Roxy and Corey Shilhanek

commensurate with the amount of funds deposited with the federal district court for payment of medical expenses incurred by

Roxy and Corey Shilhanek. Appellants also contend that the funds currently on deposit with the federal court were paid in

accordance with the Ridley decision and constitute voluntary payments under § 26-1-701, MCA (1997), entitling them to a

corresponding offset against the judgment in favor of Roxy and Corey Shilhanek. In addition, the Appellants assert that the

Shilhaneks should be required to file a partial satisfaction of judgment with regard to Roxy and Corey Shilhanek in that amount.

¶36.The Shilhaneks contend that in spite of the express holding in Ridley, requiring an insurer to pay an injured third party's

medical expenses prior to final settlement when liability is reasonably clear, the Appellants chose not to pay Roxy and Corey

Shilhanek. Instead, the Appellants' insurer filed an interpleader action and deposited the funds in federal district court, making

those funds inaccessible to the Shilhaneks. Since the funds are currently on deposit with the federal district court and are the

subject of an interpleader action between the Shilhaneks and their health insurance provider, the Shilhaneks urge this Court to

affirm the District Court and determine that the Appellants are not at this point entitled to an offset against the judgment for the

funds deposited in federal court.

¶37.The District Court denied the Appellants' request for an offset for the money deposited with the federal court without

prejudice, pending the eventual decision of the federal court. In doing so, the District Court stated that the problem apparent

with the Appellants' line of reasoning was that the money has not yet been paid to the Plaintiffs. In addition, the District Court

found it significant that a joint request for payment of the accrued medical expenses had been made by the Shilhaneks, their

health insurance provider, and the administrator of the health insurance plan and the Appellants' insurer chose to initiate an

interpleader action regarding the funds. The District Court determined that it was not inclined to give a credit for the interpled

funds, particularly since the Plaintiffs have not been fully compensated.

¶38.Section 26-1-701, MCA (1997), provides:

Legislative policy. The legislature hereby declares that the health, welfare, and safety of the people of the state of Montana

would be enhanced by the expeditious handling of liability claims. The legislature further declares that the handling of such

claims would be expedited if voluntary payment by or on behalf of one person to or on behalf of a person who has

sustained injury to his person or damage to his property could not be construed as an admission of fault or liability as to

any claim arising out of the occurrence which gave rise to such injury or damage.

Section 26-1-706, MCA (1997), sets forth the effect a voluntary payment will have on a judgment:

After entry of a judgment in an action for damages for personal injuries, including death, or for damage to property arising out

of any occurrence, any voluntary partial payment theretofore made shall be treated as a credit against such judgment and shall

be deductible from the amount of such judgment.

These statutes encourage voluntary payments by or on behalf of one person to or on behalf of a person who has sustained

injury to his person or damage to his property.

¶39.Here, payment of Roxy and Corey Shilhanek's accrued medical expenses has been deposited with the federal district

court and is the subject of an interpleader action between the Shilhaneks and their health insurance provider. Thus, while

payment for Roxy and Corey Shilhanek's accrued medical expenses has been made on behalf of the Appellants, it has not

been made to the Plaintiffs or anyone on their behalf. Therefore, such voluntary payment does not currently qualify for a credit

against the judgment in favor of the Shilhaneks under § 26-1-706, MCA (1997). Accordingly, we conclude that the District

Court did not err when it denied without prejudice the Appellants' request for a credit for the money deposited with the federal

court, pending the eventual decision of the federal court.

ISSUE 3

¶40.Did the District Court abuse its discretion when it denied the Appellants' request to allocate money tendered to the

Shilhaneks toward the punitive damage award and when it denied the Appellants' request to require the Shilhaneks to file a

corresponding satisfaction of judgment with respect to the punitive damage award?

¶41.Appellants argue that they have the power to specifically designate payment to the punitive damage award and that a

satisfaction of judgment with regard to the punitive damage award should be entered of record.

Appellants cite various

statutes in support of their position.

¶42.First, Appellants assert that § 25-9-311, MCA (1997), requires the party in whose favor a judgment has been entered

to provide a satisfaction of that judgment and if the party fails to do so, the district court has the power to compel the party to

prepare a satisfaction of judgment. Second, Appellants contend that § 28-1-1106, MCA (1997), provides a debtor with the

power to designate to which particular obligation a payment should be credited. Lastly, Appellants cite § 28-1-1225, MCA

(1997), regarding the extinguishment of an obligation by the deposit of money offered in payment, for the proposition that the

power lies with the debtor and not the creditor when it comes to payment.

¶43.The Shilhaneks point out that Title 28, MCA, applies to contracts and other obligations. In addition, the Shilhaneks

specifically reference § 28-1-103, MCA (1997), which limits the application of Title 28, MCA, to contractual obligations:

"The rules which govern the interpretation of contracts are prescribed by this title and Title 1."

¶44.The District Court agreed with the Shilhaneks and determined that Title 28, MCA, only applied to contractual obligations

and noted that rules for interpreting obligations arising from judgments is found in Title 25, MCA. As a result of the

Appellants' failure to provide the District Court with a basis in the law to allow them to designate payment in satisfaction of the

punitive damage award, the District Court found compelling reasons not to grant the Appellants' request. First, the District

Court noted that there was a complete lack of case law for the proposition that a defendant can dictate how damages it owes

to a plaintiff are characterized. Second, the District Court observed that in this case, the Appellants owe more than double the

available insurance coverage and are obligated to pay the policy limits to satisfy the verdict. Finally, the District Court stated

that it was at a loss as to why it should allocate 22 percent of the available insurance proceeds to the punitive damage award

given the rather harsh tax consequences such a ruling would have upon the Shilhaneks.

¶45.Based on the Appellants' failure to provide the District Court with a basis in the law to grant their request and the District

Court's finding of compelling reasons not to grant Appellants' request, it cannot be said that the District Court acted arbitrarily

without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.

Accordingly, we conclude that the District Court did not abuse its discretion when it denied the Appellants' request to allocate

money tendered to the Shilhaneks toward the punitive damage award and when it denied the Appellants' request to require the

Shilhaneks to file a corresponding satisfaction of judgment with respect to the punitive damage award.

ISSUE 4

¶46.Did the District Court abuse its discretion when it allowed Canal to intervene and declared that Canal shall be treated as

any other party to this action?

¶47.Canal asserts that it filed its motion to intervene for the limited purpose of providing factual information to correct errors

of fact regarding Canal made by one of the Shilhaneks' attorneys. The Shilhaneks respond that Canal's motion was granted,

not denied and therefore, Canal has nothing to appeal. In addition, the Shilhaneks assert that not only is a trial court allowed to

permit intervention, it may impose conditions on the intervention. Pursuant to Rule 24(b), M.R.Civ.P., the District Court

granted Canal's motion to intervene and declared that Canal shall be treated as any other party to the action.

¶48.Under Rule 24(b), M.R.Civ.P., a trial court has discretion to allow permissive intervention:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to

intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In

exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the

rights of the original parties.

As conceded by Canal, a court may allow intervention with conditions or for a limited purpose. See 6 James Wm. Moore et

al., Moore's Federal Practice ¶ 24.23 (3d ed. 1998). ¶ Here, Canal made its motion to intervene for the limited purpose

of correcting statements made about it by one of the Shilhaneks' attorneys. The Shilhaneks agreed that Canal should be

allowed to intervene, but expressed that Canal should be allowed in as a party. Having determined that Canal had a question

of law or fact in common with the main action and good cause being shown, the District Court allowed Canal to intervene as a

party pursuant to Rule 24(b), M.R.Civ.P.

¶39.We will not substitute our judgment for the district court's unless it clearly abused its discretion. See Jarvenpaa, ¶ 13.

We cannot say that the District Court's ruling allowing Canal to intervene as a party was an abuse of discretion. The District

Court found that Canal's motion to intervene met the criteria necessary for permissive intervention under Rule 24(b),

M.R.Civ.P., and conditioned Canal's intervention in the action on Canal being treated as any other party. Consequently, we

conclude that the District did not abuse its discretion when it granted Canal's motion to intervene and conditioned the

intervention on Canal being treated as a party to the action.

¶40.Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART