No. 99-444

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 228

301 Mont. 240

8 P. 3d 778

KENNETH R. FINSTAD and EDITH L.

FINSTAD, husband and wife,

Plaintiffs, Respondents, and Cross-Appellants,

v.

W.R. GRACE & CO.-Conn., a Connecticut

corporation, and DOES I-IV,

Defendants, Appellants, and Cross-Respondents.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Gary L. Graham and David C. Berkoff, Garlington, Lohn & Robinson,

Missoula, Montana

For Respondents:

Allan M. McGarvey (argued), Jon L. Heberling, Roger M. Sullivan,

McGarvey, Heberling, Sullivan & McGarvey, Kalispell, Montana

For Amicus (Montana Trial Lawyers Association):

Sean Hinchey (argued), Bottomly Law Offices, Kalispell, Montana

Jennifer Hendricks, Meloy & Morrison, Helena, Montana

Argued: March 21, 2000

Submitted: April 27, 2000

Decided: August 22, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Kenneth R. Finstad and Edith L. Finstad, husband and wife (Finstads), filed suit against W.R. Grace & Co.-Conn. (W.R. Grace) in the Nineteenth Judicial District Court, Lincoln County. A jury trial resulted in a verdict in favor of the Finstads, awarding $400,000 in compensatory damages and determining that an award of punitive damages was warranted. Immediately thereafter, the District Court conducted a mini-trial regarding the award of punitive damages. At the conclusion of the punitive damage mini-trial, the jury, by a vote of eight to four, awarded the Finstads punitive damages in the amount of $83,000. After reviewing the jury's punitive damage award, the District Court entered findings of fact, conclusions of law, and an order affirming the award. W.R. Grace appeals from the final judgment entered in favor of the Finstads and the Finstads cross-appeal. We affirm in part, reverse in part, and remand for a new trial on the amount of punitive damages.

¶2 W.R. Grace presents the following issues on appeal:

¶3 1. Whether the District Court erred when it declared § 27-1-221(6), MCA, unconstitutional?

¶4 2. Whether the District Court erred when it denied W.R. Grace's motion to dismiss the Finstads' claim for punitive damages based on the theory of collateral estoppel by virtual representation?

¶5 The Finstads raise the following issues on cross-appeal:

¶6 1. Whether the District Court erred when it allowed the jury to be advised that the Finstads would be the recipients of the punitive damage award?

¶7 2. Whether the District Court erred when it allowed W.R. Grace to present evidence of other asbestos litigation involving W.R. Grace as well as fictional average amounts for each pending claim during the punitive damage mini-trial?

## BACKGROUND

¶8 Kenneth Finstad was employed by W.R. Grace at its vermiculite mining and milling operation in Lincoln County, Montana, from 1965 to 1967. During his employment with W.R. Grace, Mr. Finstad was exposed to dust containing tremolite asbestos. Mr. Finstad was subsequently diagnosed with asbestosis in September 1998.

¶9 On October 2, 1998, the Finstads filed a personal injury action against W.R. Grace seeking compensatory and punitive damages. W.R. Grace filed a motion to dismiss the claim for punitive damages on the basis that the issue of punitive damages had already been decided in two previous cases involving W.R. Grace and was barred under the doctrine of collateral estoppel by virtual representation. After the motion had been fully briefed by the parties, the District Court issued an order denying dismissal of the Finstads' claim for punitive damages.

¶10 The parties conducted discovery and filed several motions in limine. After the motions in limine had been fully briefed by the parties, the District Court issued an order granting the Finstads' motion regarding the constitutional right to a jury verdict by a majority of two-thirds in a civil case. In doing so, the District Court declared § 27-1-221(6), MCA, to be unconstitutional.

¶11 A jury trial was commenced on May 3, 1999, resulting in verdicts awarding the

Finstads compensatory and punitive damages. Judgment was entered on the verdicts from which W.R. Grace appeals and the Finstads cross-appeal. During appellate mediation pursuant to Rule 54, M.R.App.P., the parties settled the issues concerning compensatory damages, preserving the issues pertaining to punitive damages for appeal.

## ISSUE 1

¶12 Whether the District Court erred when it declared § 27-1-221(6), MCA, unconstitutional?

¶13 "A legislative enactment is presumed to be constitutional and will be upheld on review except when proven to be unconstitutional beyond a reasonable doubt." *State v. Lilburn* (1994), 265 Mont. 258, 262, 875 P.2d 1036, 1039. We have also previously held that "the burden of demonstrating an alleged constitutional infirmity in a legislative enactment rests upon the party raising the challenge." *State v. Lorash* (1989), 238 Mont. 345, 347, 777 P.2d 884, 886.

¶14 The Finstads allege that the portion of § 27-1-221(6), MCA, which states that an award of punitive damages must be unanimous as to liability and amount, violates Article II, Section 26 of the Montana Constitution guaranteeing the right to a trial by jury in all civil cases and a verdict by a two-thirds majority. In response, W.R. Grace asserts that there is no constitutional right to punitive damages in Montana and that this Court has upheld legislative enactments limiting and even eliminating punitive damages. W.R. Grace also claims that before a jury can reach the issue of punitive damages, the verdict by a two-thirds majority is satisfied upon its determination of the issue of compensatory damages.

¶15 The District Court concluded, as a matter of law, that the framers of the Montana Constitution intended that in all civil actions two-thirds of the jury may render a verdict and a verdict so rendered shall have the same force and effect as if it were unanimous. The District Court also concluded that punitive damage claims are civil actions. The court went on to rule that the unanimous verdict provision of § 27-1-221(6), MCA, directly contradicted the plain language of Article II, Section 26 of the Montana Constitution, that the provision was unconstitutional beyond a reasonable doubt, and that it was thus void *ab initio*.

¶16 We have previously stated:

In interpreting a constitutional provision, the intent of the framers of the constitutional provision controls its meaning. The intent of the framers should be determined from the plain meaning of the words used. If that is possible, no other means of interpretation are proper.

*Woirhaye v. Montana Fourth Judicial Dist. Court, 1998 MT 320, ¶ 15, 292 Mont. 185, ¶ 15, 972 P.2d 800, ¶ 15 (citations omitted). Article II, Section 26 of the Montana Constitution provides:*

> **Trial by jury.** The right of trial by jury is secured to all and shall remain inviolate. . . . *In all civil actions, two-thirds of the jury may render a verdict, and a verdict so rendered shall have the same force and effect as if all had concurred therein. In all criminal actions, the verdict shall be unanimous.*

(Emphasis added.) The plain language of Article II, Section 26 clearly and unambiguously provides that in all civil actions two-thirds of the jury may render a verdict that has the same force and effect as if the entire jury had concurred in the decision.

¶18 The portion of § 27-1-221(6), MCA, at issue was added in 1997 and states: "An award of punitive damages must be unanimous as to liability and amount." To determine whether this portion of § 27-1-221(6), MCA, conflicts with Article II, Section 26 of the Montana Constitution, we must decide if the District Court was correct in concluding that claims for punitive damages are civil actions.

¶18 "A civil action is prosecuted by one party against another for the enforcement or protection of a right or the redress or prevention of a wrong." Section 27-1-103(2), MCA. Here, the Finstads brought suit against W.R. Grace for redress of a wrong and sought punitive damages to punish and deter W.R. Grace from committing similar wrongful conduct. Thus, the Finstads' action, which includes their claim for punitive damages, fits within the statutory definition of a civil action.

¶19 W.R. Grace argues that since an award of punitive damages is only permitted after a showing of actual damages, if the jury reaches the issue of punitive damages, it must have already satisfied the constitutional guarantee by rendering at least a two-thirds verdict on the issue of liability. It is on this basis that W.R. Grace believes the legislature may restrict punitive damage awards by requiring a unanimous decision of the trier of fact. We disagree.

¶20 It is true that we have previously held that a party must present evidence of actual damages to support an award of punitive damages. *See Harris v. American Gen. Life Ins. Co.* (1983), 202 Mont. 393, 400-01, 658 P.2d 1089, 1092-93. However, as such, punitive damages are merely a component of recovery of the underlying civil cause of action. *See* 22 Am. Jur. 2d *Damages* § 741 (1988).

¶21 In addition, under Montana law punitive damages serve two purposes: (1) to set an example, and (2) to punish the wrongdoer. *See* § 27-1-220(1), MCA; *see also Tillett v. Lippert* (1996), 275 Mont. 1, 8, 909 P.2d 1158, 1162. Punitive damages are not imposed as a substitute for criminal punishment, but rather as enlarged damages for a civil wrong. They are a type of private fine or civil penalty inflicted to deter similar conduct in the future. *See* 22 Am. Jur. 2d *Damages* § 736 (1988); *see also Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 350, 94 S. Ct. 2997, 3012, 41 L. Ed. 2d 789. Consequently, we concur in the District Court's determination that punitive damages are civil actions.

¶22 As a result, the portion of § 27-1-221(6), MCA, requiring an award of punitive damages to be unanimous as to liability and amount directly conflicts with Article II, Section 26 of the Montana Constitution. Accordingly, we conclude that the District Court did not err when it declared that portion of § 27-1-221(6), MCA, unconstitutional.

## ISSUE 2

¶23 Whether the District Court erred when it denied W.R. Grace's motion to dismiss the Finstads' claim for punitive damages based on the theory of collateral estoppel by virtual representation?

¶24 The standard of review concerning a district court's ruling on a motion to dismiss under Rule 12(b)(6), M..R.Civ.P., is as follows:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief. A motion to dismiss under Rule 12 (b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.

*Boreen v. Christensen* (1994), 267 Mont. 405, 408, 884 P.2d 761, 762. *The determination that a complaint fails to state a claim upon which relief can be granted is a conclusion of law, which we review to determine whether the court's interpretation of the law is correct. See Boreen, 267 Mont. at 408, 884 P.2d at 762.*

¶25 W.R. Grace alleges that the Finstads' claim for punitive damages should have been dismissed based on the doctrine of collateral estoppel since the issue had already been litigated in two previous Lincoln County asbestos cases against W.R. Grace. Specifically, W.R. Grace contends that the issues in the prior cases were identical to those presented in this case, final judgments on the merits were rendered in the previous actions, and the party against whom the doctrine is invoked was a party to, or in privity with a party, in the previous cases and were thus virtually represented by those parties.

¶26 The Finstads contend that claim preclusion requires both an identity of parties and issues between the current and former adjudication, neither of which exists in the instant case. The Finstads also contend that virtual representation is a narrow doctrine and that W. R. Grace's interpretation would violate both substantive and procedural due process.

¶27 The District Court determined that the issues relating to punitive damages presented by the Finstads were not identical to the issues presented by the plaintiffs in the two previous cases. The District Court also went on to rule on the issue of virtual representation, stating that W.R. Grace had failed to show that the Finstads exercised any control over the preceding litigation or that the plaintiffs in the earlier cases were in any way legally accountable to the Finstads in those cases. Thus, the District Court concluded that the doctrine of collateral estoppel did not apply because W.R. Grace failed to establish that the issues in the previous cases were identical to the issues in the instant case and failed to establish that the Finstads were in privity with or virtually represented by the plaintiffs in the previous cases.

¶28 We previously distinguished collateral estoppel from res judicata in *Holtman v. 4-G's Plumbing & Heating, Inc.* (1994), 264 Mont. 432, 872 P.2d 318:

> Collateral estoppel, sometimes referred to as issue preclusion, is a form of res judicata. While res judicata bars parties from relitigating claims in subsequent proceedings based on the same cause of action, collateral estoppel bars the reopening of an issue in a second cause of action that has been litigated and determined in a prior suit.

The doctrine of collateral estoppel consists of three elements:

> 1) the identical issue raised has been previously decided in a prior adjudication;
>
> 2) a final judgment on the merits was issued in the prior adjudication; and
>
> 3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication.

*Holtman*, 264 Mont. at 439, 872 P.2d at 322.

¶29 "Identity of issues is the most crucial element of collateral estoppel." *Holtman*, 264 Mont. at 439, 872 P.2d at 322. To satisfy this element, the identical issue or "precise question" must have been litigated in the prior actions. We compare the pleadings, evidence, and circumstances surrounding the actions to determine whether the issue raised is identical. *See Holtman*, 264 Mont. at 439, 872 P.2d at 322.

¶30 A review of the record reveals that while some of the evidence and witnesses with regard to the punitive damages claim in the instant case were the same as they were in the two previous cases, several significant factual distinctions and legal claims exist. First of all, one of the previous cases was a personal injury action involving a W.R. Grace employee who worked at the mine from 1959 to 1961 and the other was a wrongful death action involving the family members of the wife of a W.R. Grace employee who had worked at the Libby mine from 1954 to 1973. Second, the job duties of each of the employees involved in all of these cases vary. Third, it has been alleged that W.R. Grace possessed varying degrees of knowledge concerning the asbestos hazards at given time periods with regard to particular employees. Finally, when the District Court compared the pleadings in the instant case with the two previous cases, it found that the basis for the plaintiffs' punitive damages claims varied from actual malice to actual fraud.

¶31 Consequently, in determining whether an award of punitive damages is warranted, the trier of fact will need to consider whether the claim is based on actual fraud or actual malice, the degree of W.R. Grace's knowledge concerning the asbestos hazards related to the job or jobs the employee performed during the time period the employee worked at the mine, and the length of time the employee worked at the mine, among other factors relating to the particular facts and circumstances of the claim.[(1)] Accordingly, we conclude

that the District Court did not err when it concluded that the issues relating to punitive damages presented by the Finstads were not identical to those presented by the plaintiffs in the two previous cases. Thus, the first element of collateral estoppel has not been met. As a result, the Finstads' claim for punitive damages is not barred by the doctrine of collateral estoppel.

¶32 As part of its ruling with regard to the issue of collateral estoppel, the District Court addressed W.R. Grace's argument concerning virtual representation. In addition, the parties have devoted a significant portion of their briefs on appeal to the issue of virtual representation. However, based on our determination that the first and most crucial element of collateral estoppel has not been met, we need not address the third element regarding whether the Finstads were virtually represented with respect to their punitive damage claim by the plaintiffs in the two previous cases.

CROSS-APPEAL

ISSUE 1

¶33 Whether the District Court erred when it allowed the jury to be advised that the Finstads would be the recipients of the punitive damage award?

¶34 The Finstads allege that the District Court erred by refusing to give their proposed jury instruction concerning punitive damages which stated that the jury was not to consider where the punitive damage payment would go. In addition, the Finstads contend that the District Court compounded this error when it permitted W.R. Grace to state in closing argument that the punitive damage award would go to the Finstads. The Finstads argue that consideration of any effect of a punitive damage award, including the beneficiary of the award, improperly distracts the jury from the purpose of such an award, which is to punish the wrongdoer and to set an example, and results in an improper reduction in the amount of punitive damages awarded.

¶35 Conversely, W.R. Grace contends that the jury was properly informed that the punitive damage award would go to the Finstads. In support of this contention, W.R. Grace states that the Finstads were the ones claiming the punitive damages and they would be the only ones entitled to enforce a judgment awarding such damages.

¶36 During closing argument counsel for W.R. Grace stated, "Your award of punitive

damages in this case goes to Mr. and Mrs. Finstad. It doesn't go to the other workers. They have their own claims." During rebuttal closing argument, the Finstads' counsel stated that counsel for W.R. Grace "has no idea where the punitive damage award will go," which was objected to by counsel for W.R. Grace. At that point, the District Court stated that "the award goes to the Finstads" and "what they choose to do with it is their own decision."

¶37 The standard of review for a district court's refusal to give a proposed jury instruction is whether the district court abused its discretion. *See Barnes v. City of Thompson Falls*, 1999 MT 77, ¶ 8, 294 Mont. 76, ¶ 8, 979 P.2d 1275, ¶ 8. "A trial court is imbued with broad discretion to determine whether or not it will give a proposed instruction to the jury, and this Court will not overturn a district court on the basis of alleged instructional errors absent an abuse of that discretion." *Barnes*, ¶ 8.

¶38 The Finstads offered a jury instruction that stated, among other things, the jury was not to consider where the punitive damage payment would go. The District Court rejected this instruction and instead gave Montana Pattern Instruction No. 25.65 relating to the determination of the amount of punitive damages. The instruction given by the District Court set forth the statutory criteria for determining the amount of an award of punitive damages and made no mention of the recipient of the punitive damage award. In enacting the statutory scheme for punitive damages, the legislature did not prohibit juries from considering where a punitive damage payment would go when determining the amount of the award. Furthermore, party plaintiffs are the true recipients of punitive damage awards and keeping such information from jurors would only frustrate the goal of every trial which is a search for the truth. As a result, we conclude that the District Court did not abuse its discretion when it refused to give the Finstads' proposed instruction.

## ISSUE 2

¶39 Whether the District Court erred when it allowed W.R. Grace to present evidence of other asbestos litigation involving W.R. Grace as well as fictional average amounts for each pending claim during the punitive damage mini-trial?

¶40 The Finstads allege that the District Court erred when it overruled their objections to portions of the economic expert's deposition that were presented during the punitive damage mini-trial. The Finstads also contend that it was error to allow W.R. Grace to present testimony and statements during closing argument regarding the number of asbestos claims pending in Lincoln County as well as nationwide and fictional average

amounts for each of these claims. The Finstads contend that this evidence was irrelevant, misleading, and prejudicial, which was compounded by the court taking judicial notice of the number of asbestos claims pending against W.R. Grace in Lincoln County.

¶41 W.R. Grace asserts that the District Court did not err in admitting the portions of the economic expert's deposition at issue. W.R. Grace argues that it properly posed the hypothetical calculations involving the number of asbestos-related personal injury claims to test the expert's opinions of the company's worth. In addition, W.R. Grace contends that the court acted correctly when it took judicial notice of the number of asbestos cases pending against W.R. Grace in Lincoln County to clarify the number of claims used in the hypothetical calculations.

¶42 Moreover, W.R. Grace argues that the Finstads did not object to the expert's testimony concerning the number of pending asbestos claims nor did the Finstads object to the District Court taking judicial notice of the pending claims in Lincoln County, resulting in waiver of these arguments on appeal. W.R. Grace also contends that the Finstads have not shown any prejudice as a result of the hypothetical calculations.

¶43 The standard of review for a district court's evidentiary rulings is abuse of discretion. *See Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 353, 916 P.2d 122, 128. The district court has broad discretion to determine if evidence is admissible. Thus, absent an abuse of that discretion, this Court will not overturn the district court's determination. *See Busta*, 276 Mont. at 353, 916 P.2d at 128.

¶44 Prior to trial, the Finstads filed written objections to portions of the economic expert's deposition that W.R. Grace had designated for use during trial on the grounds that the testimony was irrelevant, speculative, argumentative, assumed facts not in evidence, and lacked foundation. The portions of the testimony objected to included discussion of the number of claims pending against W.R. Grace and the hypothetical calculations. Prior to commencement of the punitive damage portion of the trial, counsel for the Finstads also objected to the introduction of the expert's testimony regarding the hypothetical calculations. The District Court overruled the Finstads' objection on the basis that the probative value of the testimony substantially outweighed its prejudicial impact. Since the District Court ruled on the objections, there was no need for further objection. *See State v. Harris*, 1999 MT 115, ¶ 30, 294 Mont. 397, ¶ 30, 983 P.2d 881, ¶ 30. Therefore, we conclude that the Finstads preserved their objections regarding the expert's testimony for appeal.

¶45 Section 27-1-221(7), MCA, sets forth guidelines for determining the amount of an award of punitive damages:

(a) Evidence regarding a defendant's financial affairs, financial condition, and net worth is not admissible in a trial to determine whether a defendant is liable for punitive damages. When the jury returns a verdict finding a defendant liable for punitive damages, the amount of punitive damages must then be determined by the jury in an immediate, separate proceeding and be submitted to the judge for review as provided in subsection (7)(c). In the separate proceeding to determine the amount of punitive damages to be awarded, the defendant's financial affairs, financial condition, and net worth must be considered.

(b) When an award of punitive damages is made by the judge, the judge shall clearly state the reasons for making the award in findings of fact and conclusions of law, demonstrating consideration of each of the following matters:

(i) the nature and reprehensibility of the defendant's wrongdoing;

(ii) the extent of the defendant's wrongdoing;

(iii) the intent of the defendant in committing the wrong;

(iv) the profitability of the defendant's wrongdoing, if applicable;

(v) the amount of actual damages awarded by the jury;

(vi) the defendant's net worth;

(vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;

(viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and

(ix) any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

(c) The judge shall review a jury award of punitive damages, giving consideration to each of the matters listed in subsection (7)(b). If after review the judge determines that the jury award of punitive damages should be increased or decreased, the judge may do so. The judge shall clearly state the reasons for increasing, decreasing, or not increasing or decreasing the punitive damages award of the jury in findings of fact and conclusions of law, demonstrating consideration of each of the factors listed in subsection (7)(b).

¶46 The testimony at issue in the instant case involved discussion of the approximately 97,000 asbestos cases pending against W.R. Grace nationwide, as well as the 84 asbestos cases pending against W.R. Grace in Lincoln County. Counsel for W.R. Grace asked the economic expert to perform a series of calculations using the fictional amounts of $30,000; $20,000; and $10,000 for each claim and multiplying the figures by the 97,000 claims pending nationwide. In addition, counsel for W.R. Grace asked the jury in closing argument to multiply the $400,000 compensatory damage award in this case by the 97,000 pending cases nationwide and the 84 claims pending in Lincoln County before rendering a decision regarding the amount of punitive damages to ensure that funds would be available to pay compensatory damages for the potential claims of other plaintiffs who are sick and injured on account of the actions of W.R. Grace.

¶47 The legislature did not include other pending or potential litigation against the defendant as a factor the judge is to consider when reviewing the amount of a jury's punitive damage award. While this information may be relevant to demonstrate the existence of actual malice or actual fraud in determining whether an award of punitive damages is appropriate, it is not relevant to the jury's determination of the amount of punitive damages.

¶48 Montana's statutory scheme recognizes and addresses the fact that multiple claims for punitive damages may be brought against a defendant for a single wrongful act. The legislative safeguards listed in § 27-2-221, MCA, ensure that an award of punitive damages is not greater than reasonably necessary to punish and deter. *See Pacific Mut. Life Ins. Co. v. Haslip* (1991), 499 U.S. 1, 22-23, 111 S. Ct. 1032, 1045-46, 113 L. Ed. 2d 1. These safeguards include consideration of previous awards of punitive damages and potential or prior criminal sanctions against the defendant. There is no mention of consideration of pending or potential claims against the defendant. Advising the jury of the number of claims pending against a defendant and attempting to predict the total amount of the defendant's liability for these claims by using figures without any basis in

fact, is highly speculative.

¶49 While § 27-1-221(7)(b)(ix), MCA, provides for consideration of "any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages," consideration of the type of evidence at issue in this case could not have been what the legislature intended given the purpose for punitive damages and the factors for reviewing the amount of such an award, especially considering that the statute specifically mandates consideration of previous awards of punitive damages against a defendant. Accordingly, we conclude that the District Court abused its discretion when it allowed W. R. Grace to present evidence of other asbestos litigation involving W.R. Grace as well as fictional average amounts for each pending claim during the punitive damage mini-trial.

¶50 Affirmed in part, reversed in part, and remanded for a new trial on the amount of punitive damages.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

Justice W. William Leaphart dissents.

¶51 I concur with the Court's resolution of Issue 1 and 2 and with the second cross-appeal issue. I dissent as to the first issue on cross-appeal: "Whether the District Court erred when it allowed the jury to be advised that the Finstads would be the recipients of the punitive damage award?"

¶52 In Tillett v. Lippert (1996), 275 Mont. 1, 909 P.2d 1158, we held that under Montana statute, § 27-1-220, MCA, punitive damages serve two purposes: (1) to set an example, and (2) to punish the wrongdoer.

> The decisions of this Court further support the conclusion that punitive damages
> serve not only to punish, but also to set an example to the public for purposes of

deterrence. Punitive damages should not be in excess of the "amount necessary adequately to punish the defendant *and serve as an example to it and others*."

*Tillett, 275 Mont. at 8, 909 P.2d at 1162 (citations omitted). Clearly the focus of a punitive damage award should be on punishing the wrongdoer and setting an example. Nothing in the statute or in the rationale for assessing punitive damages would suggest that the identity of the recipient is a relevant consideration.*

¶53 Naming the recipient of the punitive damage award serves no purpose other than to influence the jury in arriving at an appropriate figure. This information can work to the detriment of the defense or the plaintiff depending upon the statutory scheme at issue. In states where all or part of the punitive damage award goes to a public fund, courts have held that informing the jury of this fact is improper since it tends to inflate the award. In Ford v. Uniroyal Goodrich Tire Co. (Ga. 1996), 476 S.E.2d 565, the Georgia Supreme Court held that an instruction advising the jury that seventy-five percent of the punitive damage award would go to the state's treasury was improper.

> As the statute repeatedly states, the purpose of punitive damages is to punish and deter the defendant, not to compensate the victim. . . . Given the unquestioned purpose of the punitive damages statute, the sole issue for a jury is the amount of money necessary to punish the defendant and deter future misconduct. Therefore, it is irrelevant who will be compensated by the award or how much the plaintiff will ultimately receive. By instructing the jury on the statutory scheme for allocating a punitive damages award, the trial court improperly shifted the jury's focus from the critical question of the defendant's conduct to the inappropriate question of the plaintiff's compensation.

*Ford, 476 S.E.2d at 570.*

¶54 On a related issue, the Fifth Circuit Court of Appeals held that it was error to instruct the jury that damages in a civil antitrust case could be trebled. Instructing the jury as to the multiplier effect would thwart the purpose of treble damages, which is to deter violations and encourage private enforcement of the antitrust laws. The likely result of such an instruction is that "juries will adjust the damage award downward or find no liability, therefore thwarting Congress's purpose, because of some notions of a windfall to the plaintiff." Pollack & Riley, Inc. v. Pearl Brewing Co. (1974), 498 F.2d 1240 at 1243. Although the *Pollack & Riley* decision does not involve the naming of the recipient, it underscores how irrelevant factors tend to shift the jury's attention away from

considerations of punishment and towards adjusting damages or avoiding windfalls.

¶55 In Honeywell v. Sterling Furniture Co. (Or. 1990), 797 P.2d 1019, the Oregon Supreme Court held that it was reversible error to instruct the jury that a portion of any punitive damage award will be used to pay the plaintiff's attorney or to contribute to a worthy cause. The court further concluded that such an instruction does nothing to further or even to inform the jury as to the proper goals of punitive damage awards. Concluding that such an instruction distracts the jury from the appropriate line of analysis, the court stated:

> We agree with the Court of Appeals that the potential effect of the instruction was to "[permit] a jury to consider as a part of its deliberations on punitive damages that a plaintiff should receive a certain amount of money and, in order to ensure that he does, to add additional amounts to pay the attorney fees and contributions to the Criminal Injuries Compensation Account." We also think there is another, perhaps even more serious problem with the instruction: It encouraged the jury to award punitive damages for a purpose, enhancement of the Criminal Injuries Compensation Account, that is not a reason for awarding punitive damages under Oregon law. So construed, the instruction was erroneous.

> . . . .

> Offering a jury an additional, inappropriate basis for awarding punitive damages harmed the defendant.

*Honeywell, 797 P.2d at 1022 (citation omitted).*

¶56 As the above authorities illustrate, advising the jury as to how or to whom a punitive damage award is to be distributed will, depending upon the case, sometimes work to the benefit of the plaintiff and other times to the benefit of the defendant. Under no circumstances, however, does such information have any probative value and it invariably interjects irrelevant considerations into the jury's deliberations thereby prejudicing one side or the other.

¶57 In Montana, where a punitive damage award inures to the benefit of the plaintiff, instructing the jury as to the identity of the recipient does not advance the goals of punishment; rather it impermissibly invites the jury to consider whether a plaintiff should

enjoy a windfall in addition to whatever compensatory damages were awarded. I would hold that the District Court erred in failing to instruct the jury that it should not consider to whom the punitive damage award would be paid.

## /S/ W. WILLIAM LEAPHART

Justice James C. Nelson joins in the foregoing dissent.

## /S/ JAMES C. NELSON

Justice Karla M. Gray, concurring in part and dissenting in part.

¶58 I join in the Court's resolution of both issues in the appeal brought by W.R. Grace and also its resolution of the first issue on cross-appeal raised by the Finstads. I respectfully dissent, however, from the Court's resolution of the second cross-appeal issue, namely, whether the District Court abused its discretion in allowing W.R. Grace to present certain evidence during the punitive damage mini-trial. I would affirm the District Court on that issue.

¶59 As the Court properly notes, our standard in reviewing a trial court's evidentiary rulings is abuse of discretion. Moreover, the discretion vested in the trial courts on such matters is "broad." *See Busta*, 276 Mont. at 353, 916 P.2d at 128. Thus, while broad discretion certainly is not without limits, that standard does not permit this Court to simply substitute its judgment for that of the trial court. Indeed, the standard for abuse of discretion is whether the district court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Shilhanek v. D-2 Trucking, Inc.*, 2000 MT 16, ¶ 24, 298 Mont. 101, ¶ 24, 994 P.2d 1105, ¶ 24 (citation omitted). This standard is--and must remain--a difficult one to meet. I submit that nothing in the Court's analysis of whether the District Court abused its discretion in admitting W.R. Grace's challenged evidence supports an abuse of discretion determination in this regard.

¶60 Section 27-1-221(7)(a), MCA, expressly provides that, in any separate proceeding to determine the amount of punitive damages to be awarded, "the defendant's financial affairs, financial condition, and net worth must be considered." The Court makes no showing that the challenged testimony at issue here does not relate to W.R. Grace's financial affairs and financial condition. Indeed, how the existence of the approximately 97,000 asbestos cases pending against W.R. Grace nationwide could *fail* to relate to its

financial affairs and condition is beyond imagining. In addition, the expert economic testimony regarding the potential value of such claims--which the Court chooses to call "fictional"--was presented through the time-honored method of inquiring of experts about hypothetical scenarios.

¶61 It is true, as the Court posits, that the Legislature did not expressly include pending or potential litigation against a defendant in enacting § 27-1-221(7), MCA. It did, however, as noted above, mandate consideration of the defendant's "financial affairs, financial condition, and net worth . . . ." *See* § 27-1-221(7)(a), MCA. I submit that such broad categorization of matters bearing on a defendant's financial condition which *must* be considered by a jury in determining the amount of punitive damages to be awarded easily encompasses the evidence at issue here. Nor--the Court's implication to the contrary notwithstanding--is there any requirement for an itemized listing of every conceivable kind of information which might fall within those categories, especially given the Legislature's inclusion of such broad categories of information in the first instance.

¶62 Furthermore, the language the Legislature used in § 27-1-221(7)(b)(ix), MCA, that matters to be considered include "*any other circumstances* that may operate to . . . reduce, without wholly defeating, punitive damages[,]" matches the breadth of the mandatory categories of information relating to a defendant's financial condition set forth in § 27-1-221(7)(a), MCA. Clearly, given the jury's award of $83,000 in punitive damages, the W.R. Grace evidence at issue did not wholly defeat punitive damages in the present case. Just as clearly, that evidence easily falls within the broad "any other circumstances" serving to reduce punitive damages language used by the Legislature.

¶63 The Court's somewhat facile observation that the Legislature did not include "other pending or potential litigation" within the ambit of matters to be considered is insupportable given the breadth of the language the Legislature quite purposely did use in both subsections (a) and (b) of § 27-1-221(7), MCA. Its further statement that the type of evidence at issue here "could not have been" what the Legislature intended is, itself, entirely speculative and equally insupportable in light of the legislative language.

¶64 For these reasons, it is clear that the District Court did not act arbitrarily without employment of conscientious judgment or exceed the bounds of reason in admitting the challenged evidence. Consequently, there is no abuse of discretion here.

¶65 Finally, even assuming *arguendo* that an abuse of discretion had been established,

error cannot be predicated on a ruling admitting evidence "unless a substantial right of the party is affected[.]" Rule 103(a), M.R.Evid. Since punitive damages were awarded and, as a result, the evidence at issue did not wholly defeat such a recovery, I cannot see how the Finstads' substantial rights were affected. True, they sought--and hoped for--a larger punitive damage award. The Court apparently agrees a larger punitive damage award should have been made. Neither seeking nor hoping, however, constitutes a "substantial right" to a larger punitive damage award. Such matters are solely within the province of the jury.

¶66 I would affirm the District Court's admission of the W.R. Grace evidence at issue here. I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY

1. In addition, we note that in each case W.R. Grace was successful in persuading the District Court to narrow the punitive damage claim to whether W.R. Grace committed actual malice or actual fraud with respect to each of the particular plaintiffs involved.