No. 96-697

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


KEITH RIDLEY,

Plaintiff and Appellant,

v.

GUARANTEE NATIONAL INSURANCE COMPANY,

Defendant and Respondent.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John M. Morrison (argued), Meloy & Morrison,
Helena, Montana

For Respondent:

Guy W. Rogers (argued) and Tiffany B. Lonnevik; Brown, Gerbase,
Cebull, Fulton, Harman & Ross; Billings, Montana

For Amici Curiae:

Ira Eakin and Michael G. Eiselein; Lynaugh, Fitzgerald & Eiselein;
Billings, Montana (for Montana Trial Lawyers Association)

Mark Staples, Staples Law Office, Helena, Montana
(for Montana Chiropractic Association)


Heard:    October 1, 1997
Submitted: October 28, 1997
Decided: December 24, 1997
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

The plaintiff, Keith Ridley, filed a complaint for declaratory judgment against the defendant, Guarantee National Insurance Company, in the District Court for the First Judicial District in Lewis and Clark County. Ridley sought a District Court judgment that õ 33-18-201, MCA, of the Montana Unfair Trade Practices Act requires a tort-feasor's insurer to pay the actual medical expenses of a tort victim as they are incurred when liability is reasonably clear. The District Court concluded that an insured does not have an obligation in all cases to pay an injured third party's medical expenses in advance of full and final settlement, even though liability is reasonably clear, and granted summary judgment to Guarantee National. Ridley appeals that decision. We reverse the order and judgment of the District Court.

The following issues are presented on appeal:

1. Did the District Court err when it concluded that the issue raised by Ridley's complaint was not appropriate for declaratory judgment pursuant to õõ 27-8-201 and -202, MCA, of the Uniform Declaratory Judgments Act?

2. Pursuant to õ 33-18-201, MCA, of the Montana Unfair Trade Practices Act, does an insurer have an obligation to pay medical expenses as incurred by an injured third-party tort victim when the liability of its insured is reasonably clear?

FACTUAL BACKGROUND

The factual record in this case is minimal. It consists of those allegations in Keith Ridley's complaint which are admitted by Guarantee National and Ridley's affidavit. There are also a number of documents attached to Ridley's complaint, and additional documents attached to briefs filed by Guarantee National in the District Court. There is little foundation for these documents and it is unclear the extent to which they have been or should be considered. However, based on the parties' allegations and the arguments made in both the District Court and this Court, it appears that the following facts are undisputed.

Ridley was injured on November 2, 1995, when the automobile in which he was a passenger collided with a vehicle operated by Kenneth Roope who was then insured against liability by Guarantee National. The driver of Ridley's vehicle was attempting to make a left-hand turn. Roope was attempting a pass to the left side of that vehicle.

In correspondence to Ridley's attorney, Guarantee National's claims adjuster acknowledged that the company's insured was 90 percent at fault for the collision. Ridley's attorney later advised the same adjuster that his client could not afford the medical treatment that had been prescribed for the injuries caused by the collision,

including an MRI exam and physical therapy, and asked that those expenses be paid by Guarantee National.  He explained that because Guarantee National had admitted that it was more than 50 percent at fault for the collision, it was liable to the claimant for all of his damages pursuant to principles of joint and several liability, and advised Guarantee National that after Ridley's condition had stabilized they would discuss full and final settlement of his claims with Guarantee National.

Guarantee National's adjuster advised Ridley's counsel that no medical expenses would be paid in advance of final settlement of Ridley's claim.

Ridley filed a complaint for declaratory judgment in the District Court for the First Judicial District in Lewis and Clark County, named Guarantee National as the defendant, and asked the District Court to conclude, pursuant to õ 33-18-201, MCA (Montana Unfair Trade Practices Act), that Guarantee National did have an obligation to pay medical expenses where liability is reasonably clear regardless of whether a final settlement had been agreed upon.

In its answer, Guarantee National admitted that a collision occurred on November 2, 1995, involving an automobile in which Ridley was a passenger and an automobile operated by its insured.  It also admitted that its insured had the majority of fault for the accident and that it declined to pay for Ridley's ongoing medical expenses.  However, it explained that its refusal was partially based on uncertainty about the causal relationship between the accident and the extent of Ridley's injuries.  As an affirmative defense, Guarantee National alleged that there was no obligation pursuant to Montana law for an insurer to pay medical expenses of an injured third party before full and final settlement of that person's claim.

Both parties moved for summary judgment.  Ridley's motion was denied and Guarantee National's motion was granted.

The District Court based its order on the following legal conclusions:

1.   Section 33-18-201, MCA, of the Unfair Claims Practices Act, requires that plaintiff prove that the insurer's conduct complained of occur "with such frequency as to indicate a general business practice" and, therefore, even if Ridley's interpretation of the statute is correct, Guarantee National is not required in every case to make advance payment of medical expenses.

2.   In this case, Guarantee National denies a causal relationship between its conduct and the full extent of Ridley's injuries; therefore, declaratory judgment will not resolve all issues before the parties and is not appropriate pursuant to the Uniform Declaratory Judgment Act.

3.   The Unfair Claims Practices Act does not require an insurer to pay an injured party's medical expenses prior to final settlement in all cases, even where

liability
is reasonably clear.

In response to Ridley's appeal, Guarantee National concedes that the District Court
erred when it concluded that he must prove a general business practice in order to state
a claim pursuant to the Unfair Claims Practices Act.  Guarantee National concedes that
pursuant to õ 33-18-242(2), MCA, a third-party claimant has an independent cause of
action against an insurer for a violation of õ 33-18-201(6) and (13), MCA, without regard
to whether the insurer's alleged violations occurred with "such frequency as to indicate
a general business practice."  Therefore, we will confine our review to the last two bases
for the District Court's order which granted summary judgment.

ISSUE 1

Did the District Court err when it concluded that the issue raised by Ridley's
complaint was not appropriate for declaratory judgment pursuant to õõ 27-8-201 and -
202, MCA, of the Uniform Declaratory Judgments Act?

"When a district court determines that declaratory relief is not necessary or proper,
we will not disturb the court's ruling absent an abuse of discretion."  Remington v.
Department of Corr. & Human Servs. (1992), 255 Mont. 480, 483, 844 P.2d 50, 51,
overruled on other grounds by Orozco v. Day (Mont. 1997), 934 P.2d 1009, 54 St. Rep.
200.  However, we review the district court's conclusions on which its decision is based,
as we do all legal issues, to determine whether they have been correctly decided.  See
Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d
680, 686.

The District Court concluded that declaratory judgment could not be granted
without a justiciable controversy and, based on our decision in Brisendine v. Department
of Commerce (1992), 253 Mont. 361, 833 P.2d 1019, concluded that that requires "'a
controversy the judicial determination of which will have the effect of a final judgment
in law or decree in equity upon the rights, status, or legal relationships of one or more
of the real parties in interest.'"  Brisendine, 253 Mont. at 364, 833 P.2d at 1021.  The
District Court concluded that that type of relief could not be granted in this case because
there were factual issues regarding the insurer's liability in addition to the legal issue
raised by Ridley.  Specifically, the District Court concluded that there was an issue
regarding the extent to which Guarantee National's insured caused the injuries for which
Ridley sought medical treatment.

On appeal, Ridley contends (1) that there was no issue regarding causation based
on his uncontroverted affidavit that the injuries for which he was being treated were
caused by the collision in which he was involved on November 2, 1995; and (2) that

even
if there were factual issues regarding causation, he is still entitled, pursuant to õõ 27-8-
201 and -202, MCA, of the Uniform Declaratory Judgment Act, to have legal issues
resolved when his rights, status, or legal relations are affected by statute.

Guarantee National responds that the District Court did not abuse its discretion
when it refused to grant declaratory relief because a justiciable controversy is a
prerequisite to such relief, and a justiciable controversy requires that the judicial
determination being sought finally resolve the rights, status, or legal relations of
the
parties.  It contends that that cannot be accomplished in this case because
regardless of
the court's interpretation of the Unfair Claims Practices Act, there remains an issue
regarding the extent of Guarantee National's liability for Ridley's medical
benefits.
Guarantee National contends that the District Court correctly decided, based on our
decision in Brisendine, to deny Ridley the relief he sought.

Section 27-8-201, MCA, of the Uniform Declaratory Judgment Act, provides, in
relevant part, as follows: "Courts of record within their respective jurisdictions
shall have
power to declare rights, status, and other legal relations whether or not further
relief is
or could be claimed."

Section 27-8-202, MCA, of the same Act, provides:

Any person . . . whose rights, status, or other legal relations are
affected by a statute . . . may have determined any question of construction
or validity arising under . . . statute . . . and obtain a declaration of rights,
status, or other legal relations thereunder.


This Court's role in the construction of a statute is simply to declare what is
stated
by the plain terms of the statute and not to insert what has been omitted.  Section
1-2-
101, MCA. The plain language of õ 27-8-202, MCA, provides that persons whose rights,
status, or other legal relations are affected by statute may ask the courts of this
state to
construe that statute for the purpose of declaring those rights.  Section 27-8-201,
MCA,
makes clear that that right to have statutes construed is not dependent on whether
further
relief "is or could be claimed."  In other words, it is not a basis for denying
declaratory
relief that all of the "rights, status, or other legal relations" of the parties
cannot be
decided in the same proceeding.

The facts in Brisendine are distinguishable from those in this case and we
conclude
that the District Court erred when it relied on that decision to deny declaratory
relief.

In Brisendine, the plaintiff was a denturist whose proposal to associate
professionally with a dentist had been rejected by the Board of Dentistry based on
its

interpretation of õ 37-4-103, MCA.  Before the Board issued its final decision, Brisendine
filed a complaint in district court for a declaratory judgment to the effect that õ 37-29-
103, MCA, did not prohibit him from entering into a business association with a dentist.
The district court dismissed his complaint pursuant to Rule 12(b)(6), M.R.Civ.P., on the
ground that it did not present a justiciable controversy.  On appeal, we held that
Brisendine's complaint lacked sufficient specificity regarding his proposed business
association to enable the Court to render a judgment which was anything other than
advisory, and that the more appropriate procedure would be to exhaust his administrative
remedies before the Board and then appeal the Board's decision, if adverse, to the district
court.  However, we did not hold that before a party is entitled to declaratory relief, he
or she must establish that the relief sought will resolve all issues between the parties.

In this case, Guarantee National has denied Ridley's claim on several bases--one
being that it has no legal obligation to pay Ridley's medical expenses prior to a final
settlement of all of his claims.  While there may also be a factual dispute regarding
causation and the extent of Guarantee National's ultimate liability, it does Ridley no good
to further document the relationship between the collision with Guarantee National's
insured and his injuries so long as Guarantee National operates under the assumption that
it has no obligation to pay for even those medical expenses clearly caused by its insured,
absent Ridley's willingness to settle all other claims for damages related to the collision.

Furthermore, Guarantee National has some basis at the present time for asserting
that it has no obligation to pay for Ridley's medical expenses.  In two separate federal
district court decisions, there has been a determination that insurers are not obligated
pursuant to õ 33-18-201, MCA, to pay medical expenses incurred by third-party tort
victims prior to a final settlement of that person's claims.  See Young v. Simenson (D.
Mont. June 6, 1987), CV-87-062-GF; Jensen v. State Farm Mut. Auto. Ins. Co. (D.
Mont. 1990), 8 Mont. Fed. Rep. 262.  Because of these decisions, Ridley correctly points
out that even if he incurred medical expenses due to the negligence of Guarantee
National's insured, and even if its insured's liability for those damages is reasonably clear
and Guarantee National still refuses to pay for those expenses, he cannot enforce his
rights to compensation pursuant to õ 33-18-242, MCA, because of the following provision
in subparagraph (5) of that statute: "An insurer may not be held liable under this section

if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." Section 33-18-242(5), MCA. In other words, based on the federal decisions, even if they are incorrect, Ridley's rights under the Act are unenforceable.

For these reasons, we conclude that the District Court erred as a matter of law when it held that the relief sought by Ridley did not present a justiciable controversy, and that the District Court abused its discretion when it declined to render a declaratory judgment in this matter pursuant to õõ 27-8-201 and -202, MCA, in order to resolve the respective rights and obligations of the parties, as established by Montana's Unfair Claims Practices Act.

ISSUE 2

Pursuant to õ 33-18-201, MCA, of the Montana Unfair Trade Practices Act, does an insurer have an obligation to pay medical expenses as incurred by an injured third-party tort victim when the liability of its insured is reasonably clear?

Section 33-18-201, MCA, provides in part that:

No person may, with such frequency as to indicate a general business practice, do any of the following:

. . . .

(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

. . . .

(13) fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage

. . . .

Ridley contends that Guarantee National is liable for medical expenses caused by its insured when liability is reasonably clear, without regard to whether a final settlement has or can be agreed upon, because subsection (6), by its plain language, makes no reference to final settlement of all claims, but refers instead to "settlements." He contends that Guarantee National has the same obligation pursuant to subsection (13) because Guarantee National's obligation to pay medical expenses is a "portion" of its duty pursuant to the liability coverage it provided to its insured which cannot be withheld as leverage to influence settlement of its obligation for other portions of coverage such as lost wages, lost earning capacity, or pain and suffering. He contends that when this Court held otherwise in Juedeman v. National Farmers Union Property and Casualty Co. (1992), 253 Mont. 278, 833 P.2d 191, it misapplied subsection (13).

Guarantee National responds that it has no obligation to pay medical expenses incurred by a third-party claimant prior to final settlement of that person's claim, even if liability is reasonably clear, because the Montana Legislature did not intend

piecemeal compensation for each aspect of a claimant's injury; the Federal District Court, on two separate occasions, has held that the Unfair Claims Practices Act does not impose such an obligation; and õ 33-18-201(13), MCA, was specifically found inapplicable to these circumstances in Juedeman.  See Juedeman, 253 Mont. at 281, 833 P.2d at 193.  Finally, Guarantee National notes that an amendment was offered to the Unfair Claims Practices Act through House Bill No. 433 in the 1995 session of the Montana Legislature, which would have imposed an obligation to pay medical expenses prior to final settlement where liability is reasonably clear, but that that amendment was not adopted.  Therefore, the Legislature obviously did not intend to impose such an obligation.

The District Court, even though it concluded that a declaratory judgment should not be granted, concluded that the statute does not, as a matter of law, require that an insurer, in all cases, pay an injured third party's medical expenses in advance of settlement, even when liability is reasonably clear.  Other than its previously discussed rationale that declaratory relief was not appropriate, and other factual issues regarding causation remain to be decided, the District Court gave no further explanation for its conclusion.

We hold that the District Court erred when it concluded that the statute in question does not require an insurer to pay an injured third party's medical expenses until final settlement, even when liability is reasonably clear.  We conclude that both subsections (6) and (13) of õ 33-18-201, MCA, by their terms, impose such an obligation.  This does not mean that an insurer is responsible for all medical expenses submitted by an injured plaintiff.  Liability must be reasonably clear for the expense that is submitted.  That is, even though liability for the accident may be reasonably clear, an insurer may still dispute a medical expense if it is not reasonably clear that the expense is causally related to the accident in question.

Although the U.S. District Court for the State of Montana, in two separate cases, has held otherwise, those decisions offer no rationale for the legal conclusion arrived at and, as we have previously held, we are not constrained by the federal judiciary's decisions when they interpret Montana law.  See Boreen v. Christiansen (1994), 267 Mont. 405, 416, 884 P.2d 761, 767.

As pointed out in Black's Law Dictionary, the word "settle" has different legal connotations in different situations:  "[T]he term may be employed as meaning to

agree,
to approve, to arrange, to ascertain, to liquidate, to come to or reach an agreement," and
other things.  Black's Law Dictionary 1372 (6th ed. 1990).  It is defined in Webster's
Ninth New Collegiate Dictionary 1078 (1984), where relevant, as "to adjust differences
or accounts."  No definition offered by either party requires that a "settlement" resolve
all disputes or all claims between two parties.

We conclude that the language of õ 33-18-201(6), MCA, imposes no such requirement.  In fact, the reference to "settlements," rather than a "final settlement,"
would suggest that the Montana Legislature anticipated that an insurer may have more than one obligation arise from the same incident.

Neither are we persuaded by Guarantee National's argument that because the 1995 Legislature declined to amend the Unfair Claims Practices Act by adding a specific requirement to pay medical expenses prior to final settlement of claims it can be inferred
that no such requirement is intended by the Act.

First, the proposed amendment was tabled at the request of its sponsors after it was
amended to the point where its supporters concluded that it was less protective than the
existing law.  Hearing on H.B. 443 before the Montana Senate 1995 Legislature Judiciary
Comm. at 4, 54th Legislature Regular Session (1995) (minutes of motion and vote to table H.B. 443).  Second, at least one representative of the insurance industry testified
that the amendment was not necessary because the obligation to compensate a third party
when liability is reasonably clear already exists.  Hearing on H.B. 443 before the Montana Senate 1995 Legislature Judiciary Comm. at 3, 54th Legislature Regular Session
(1995) (describing testimony of Greg VanHorsen, representative of State Farm Insurance
Companies).  Finally, even if some occurrence during the 1995 Legislature arguably supported Guarantee National's position, the views of a subsequent legislative body form
a hazardous basis for inferring the intent of an earlier one.  See Waterman S.S. Corp. v.
United States (1965), 381 U.S. 252, 268, 85 S. Ct. 1389, 1398, 14 L. Ed. 2d 370, 380.

Furthermore, our interpretation of subsection (6) is more consistent with the purpose of õ 33-18-201, MCA, which is to assure prompt payment of damages for which an insurer is clearly obligated.  It is also more consistent with this state's public policy,
as established by the "mandatory liability protection" provisions of Montana law found
at õõ 61-6-301 to -304, MCA.  We have held that "[i]t is clear that the mandatory liability insurance law seeks to protect members of the general public who are innocent
victims of automobile accidents." Iowa Mut. Ins. Co. v. Davis (1988), 231 Mont. 166,

170, 752 P.2d 166, 169.

One of the most significant obligations that innocent victims of automobile accidents incur and for which mandatory liability insurance laws were enacted, is the obligation to pay the costs of medical treatment.  If the insurer has no obligation to pay those expenses in a timely fashion, even though liability is reasonably clear, then the protection provided by Montana's mandatory liability laws would be of little value.

Medical expenses from even minor injuries can be devastating to a family of average income.  The inability to pay them can damage credit and, as alleged in this case, sometimes preclude adequate treatment and recovery from the very injuries caused.  Just as importantly, the financial stress of being unable to pay medical expenses can lead to the ill-advised settlement of other legitimate claims in order to secure a benefit to which an innocent victim of an automobile accident is clearly entitled.  We conclude that this is not what was intended by the Montana Legislature when mandatory liability insurance laws and unfair claims practice laws were enacted.

We also conclude that the leveraging of undisputed claims in order to settle disputed claims is exactly what the Montana Legislature sought to prohibit when it enacted õ 33-18-201(13), MCA, of the Unfair Claims Practices Act.  We conclude that our holding in Juedeman does not control the outcome in the case and that language from Juedeman which appears to be inconsistent with this holding was dicta and unnecessary to our conclusion in that case.

In Juedeman, the plaintiff, whose son was seriously injured in a one-vehicle accident, demanded payment of the insured's policy limits for his injuries.  The insurer conditioned payment on her release of any future loss of consortium claim.  She sued the insurer for bad faith pursuant to õ 33-18-201(13), MCA, on the grounds that the insurer's condition constituted "leveraging" in violation of that section.  We held that she had not established a claim as a matter of law because the insurer agreed to pay the policy limits in exchange for a release of all claims related to her son's bodily injury.  We based our conclusion on the district court's holding that the plaintiff's loss of consortium claim arose from her son's injury and, therefore, was subject to the same per person policy limits for bodily injury.  We held that since she did not contest that district court ruling, the insurer could not have violated subsection (13) because it had a right to condition payment of the policy limits on a release of all claims for which the limits were being paid.  See Juedeman, 253 Mont. at 281, 833 P.2d at 193.  Those facts do not apply to

this case.

However, the Juedeman opinion gratuitously included the following additional language, which was unnecessary to its primary conclusion:

Leveraging under õ 33-18-201(13), MCA, requires an insurer's manipulation of two coverages. The insurer must withhold prompt settlement of a reasonably clear liability claim under one coverage, in order to influence a claim arising out of another coverage. Here, Erich's bodily injury claim and Juedeman's claim for loss of consortium fall within the same policy coverage. Here, Farmers Union offered to settle both claims falling under that coverage for the maximum amount allowed under the policy. Thus, we hold the court properly found that Farmers Union did not violate õ 33-18-201(13), MCA, and properly granted defendant's motion for summary judgment.

Juedeman, 253 Mont. at 281, 833 P.2d at 193 (emphasis added).

Although our discussion of "coverages," in the context of the facts in Juedeman, is understandable because of the nature of the policy involved in that case (it provided $100,000 bodily injury per person and $300,000 per occurrence), it has incorrectly left the impression that subsection (13) is inapplicable where payment of one obligation due pursuant to a portion of coverage is withheld in order to leverage settlement of a disputed claim made pursuant to the same coverage. That result is clearly not warranted by the plain language of the statute. As pointed out by the dissenting opinion in Juedeman:

The majority then goes on to reason that because Erich's claim and Cindy's claim arose under the same coverage that leveraging did not occur under subsection (13). However, subsection (13) prohibits leveraging of a claim "under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage."

Juedeman, 253 Mont. at 285, 833 P.2d at 195 (Trieweiler, J., and Hunt, J., dissenting).

The dissent to Juedeman pointed out that the gratuitous language predicating subsection (13) on more than one "coverage" was inconsistent with our prior decision in Harris v. American General Life Insurance Co. (1983), 202 Mont. 393, 658 P.2d 1089.

In that case, the defendant insurer had issued a $10,000 life insurance policy to the plaintiff's son. An additional $10,000 of coverage was available if the son died by accident. Plaintiff's son died under circumstances that suggested the possibility of suicide.

The defendant sent plaintiff a check for the amount due under the basic policy, but conditioned payment on a release of claims due under the accidental death portion of the policy. Plaintiff filed suit for payment under both portions and for punitive damages. After suit was filed . . . defendant mailed the check back to the plaintiff without the restrictive endorsement. However, after a jury trial a verdict was returned denying recovery under

the accidental benefits portion of the policy, but awarding $30,000 in punitive damages to the plaintiff. This Court sustained the punitive damage award under the same õ 33-18-201(13), MCA, with which we are concerned in this case. We did so based on the defendant's refusal to pay under an undisputed portion of the policy without a release from liability under the disputed portion. . . . The controlling facts were that one claim, which was undisputed, was withheld to leverage resolution of another claim that was disputed.

Juedeman, 253 Mont. at 286, 833 P.2d at 196 (Trieweiler, J., and Hunt, J., dissenting).

We conclude that õ 33-18-201(13), MCA, applies to an insurer's failure to pay one type of damages for which liability has become reasonably clear in order to influence settlement of claims for other types of damages made pursuant to the same policy, and to the extent that there is language in Juedeman which suggests that the claims must be made pursuant to separate types of coverage, that language is overruled.

For these reasons, we reverse the order and judgment of the District Court and remand this case to the District Court for entry of a declaratory judgment consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ WILLIAM E. HUNT, SR.
/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the Court's opinion on issue one. I also concur in the result the Court reaches under issue two and its analysis and holding on õ 33-18-201(13), MCA. Because this case can be resolved on the basis of õ 33-18-201(13), MCA, I would not address õ 33-18-201(6), MCA. The Court having done so, however, I must respectfully dissent from the Court's interpretation of õ 33-18-201(6), MCA, and its result thereunder.

With regard to õ 33-18-201(13), MCA, the Court presents a comprehensive analysis of the statute, the inapplicability of Juedeman to this case, and the inherent irrelevance of both House Bill No. 433--which was not enacted--and its legislative history. The Court then concludes that õ 33-18-201(13), MCA, applies to an insurer's failure to pay one type of damages for which liability has become reasonably clear in order to influence settlement of a claim for another type of damages made pursuant to the same policy. This conclusion is little more than a "plain meaning" approach to the wording of õ 33-18-201(13), MCA, which clearly provides for--and establishes requirements pertaining to the settlement of--claims under different portions of the insurance policy coverage. Given the nature of this action and the record before us, the Court quite properly does not hold--or even suggest--that Guarantee National's

liability for the medical expenses submitted to date by Ridley is reasonably clear at this point or that Guarantee National has failed to promptly settle such a claim for medical expenses on which its liability is reasonably clear in order to influence settlements under other portions of the insurance policy coverage. I concur in the Court's opinion with regard to õ 33-18-201(13), MCA.

With regard to the Court's interpretation of õ 33-18-201(6), MCA, however, I cannot agree. As discussed above, õ 33-18-201(13), MCA, provides a sufficient basis on which to resolve this case; I would do so and stop there. Since the Court addresses subsection (6), MCA, and in my view does so erroneously, it is appropriate that I state the basis of my dissent from that portion of the Court's opinion.

The Court advances a relatively abbreviated interpretation of the language contained in õ 33-18-201(6), MCA, essentially concluding that the use of the plural "settlements," rather than the singular "settlement," means that the Legislature anticipated that an insurer may have more than one obligation arise from the same incident. I submit that the Legislature's "anticipation" vis-a-vis more than one obligation was addressed by the Legislature in subsection (13) of õ 33-18-201, MCA, as discussed above, but that the mere use of the plural "settlements" in subsection (6) does not relate to that "anticipation." Indeed, the plural usages throughout õ 33-18-201, MCA, follow clearly--and, in my view, only--from the introductory portion of that statute, which is the "with such frequency" language not at issue here. That is, õ 33-18-201, MCA, begins by providing that "[n]o person may, with such frequency as to indicate a general business practice, do any of the following. . . ." It is this "frequency" language which results in the remainder of the statute being written in the plural form, as to "coverages," "claims," "settlements" and the like. The plural language does not, in my view, support the Court's implicit interpretation that subsection (6) is essentially identical to subsection (13). Indeed, if that were so, there would be no need for two different subsections in the same statute, containing substantially dissimilar language.

It is my view that subsection (6) requires an insurer to attempt in good faith to effectuate a prompt, fair, equitable and final settlement of an overall claim for which liability has become reasonably clear. Subsection (13), on the other hand, does not address a good faith attempt to fully and finally settle an entire claim. Instead, it

requires an insurer to promptly settle a claim under one portion of the policy coverage,
if liability is reasonably clear, rather than use that unsettled claim as leverage in settling
claims under other portions of the coverage.  Moreover, in my opinion, the Court's
"purpose" and "policy" discussions within the context of its analysis of õ 33-18-201(6),
MCA, are more consistent with giving subsection (6) a meaning different from subsection
(13).

At the bottom line, however, and notwithstanding my disagreement with the
Court's interpretation of õ 33-18-201(6), MCA, I agree that this is an appropriate case
for declaratory judgment.  I also agree that such a judgment should be entered in Ridley's
favor on the basis of õ 33-18-201(13), MCA.  On those matters, I join the Court in
reversing the District Court.

/S/  KARLA M. GRAY