No. 01-874

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 122

ROXY SHILHANEK, an individual;
COREY SHILHANEK, a minor by and through
his guardian ad litem, TIMOTHY SHILHANEK;
RYAN SHILHANEK, a minor by and through
his guardian ad litem, TIMOTHY SHILHANEK;
and TIMOTHY SHILHANEK, an individual,
                Plaintiffs and Appellants,

      v.

D-2 TRUCKING, INC., a corporation; KRZYSZTOF
CEKLARZ, an individual; ADAM CWIKLA, and Does
1 through 50 inclusive; and CANAL INSURANCE
COMPANY, intervenor,
                Defendants and Respondents.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                       In and for the County of Yellowstone, Cause No. DV 97-704
                       The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:
                A Clifford Edwards (argued), Roger W. Frickle, Edwards, Frickle, Halverson
                & Anner Hughes, Billings, Montana

        For Respondents:
                Donald L. Harris, Larry B. Cozzens (argued), Cozzens, Warren & Harris,
                Billings, Montana

        For Amicus:
                 Lawrence A. Anderson, Great Falls, Montana (MTLA)

                          Heard:  November 7, 2002
                    Submitted:  November 21, 2002
                    Decided:   April 29, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Appellants Roxy Shilhanek, Timothy Shilhanek, Corey Shilhanek and Ryan Shilhanek (the Shilhaneks) filed a complaint against Respondents Krzysztof Ceklarz, Adam Cwikla and D-2 Trucking, Inc. (D-2), in the Thirteenth Judicial District Court, Yellowstone County. Respondent Canal Insurance Company (Canal), intervened in the case. The Shilhaneks filed a cross-claim against Canal, alleging that Canal had violated the Montana Unfair Trade Practices Act (UTPA). Canal filed a motion for summary judgment, which was denied by the District Court. Canal then filed a second motion for summary judgment, which the District Court granted. The Shilhaneks appeal. We affirm in part and reverse in part.

¶2     We restate the issues on appeal as follows:

¶3     1. Did the District Court err when it determined that Canal did not have a duty in 1997 or 1998 to pay the Shilhaneks' undisputed medical expenses until it obtained a release for its insureds?

¶4     2. Did Canal act in bad faith when it conditioned its payment of policy limits on the Shilhaneks providing it with a release of all claims against its insureds?

¶5     3. Did the District Court err when it granted Canal's motion for summary judgment with respect to the Shilhaneks' claim that Canal violated § 33-18-201(4), MCA (1997)?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     On May 4, 1997, Roxy Shilhanek and her son, Corey Shilhanek, were involved in a motor vehicle accident in Billings, Montana. The accident occurred when a truck driven by Ceklarz collided with Roxy's vehicle. The truck was owned by Cwikla and D-2. The Shilhaneks brought a lawsuit against Ceklarz, Cwikla, and D-2 on August 11, 1997. The case proceeded to trial, and a jury awarded the Shilhaneks compensatory and punitive

2

damages on July 24, 1998.

¶7     Following the jury's verdict, several post-trial motions were filed. On February 1, 1999, Canal, the liability insurer for D-2, Cwikla and Ceklarz, filed a motion to intervene in the case for the limited purpose of challenging one of the District Court's orders regarding a post-trial motion. On February 17, 1999, the District Court granted Canal's motion to intervene; however, it declared that Canal would be treated as a full party to the action. The Shilhaneks subsequently filed a cross-claim against Canal on February 19, 1999, alleging that Canal had violated the UTPA. Canal then appealed the District Court's decision to declare it a full party to the action. We affirmed the District Court with regard to this issue on January 20, 2000. See *Shilhanek v. D-2 Trucking, Inc.*, 2000 MT 16, ¶¶ 44-48, 298 Mont. 101, ¶¶ 44-48, 994 P.2d 1105, ¶¶ 44-48.

¶8     On March 1, 2000, Canal filed a motion for summary judgment, alleging that its actions were not in violation of any portion of the UTPA. The District Court denied Canal's motion on June 26, 2000. On July 16, 2001, Canal filed a second motion for summary judgment, which was similar in content to its original summary judgment motion. Canal's second motion requested that the District Court revisit its claims in light of discovery that had occurred in the case. The District Court granted Canal's second motion for summary judgment on August 28, 2001. This appeals follows.

## STANDARD OF REVIEW

¶9     Our review of a district court's grant or denial of a motion for summary judgment is *de novo*. *Hickey v. Baker School Dist. No. 12*, 2002 MT 322, ¶ 12, 313 Mont. 162, ¶ 12, 60 P.3d 966, ¶ 12. Therefore, we apply the same Rule 56, M.R.Civ.P, criteria as applied by the

3

district court. *Hickey*, ¶ 12. Pursuant to Rule 56, M.R.Civ.P.:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Hickey*, ¶ 12.

## DISCUSSION

¶10 The District Court's resolution of the Shilhaneks' cross-claim left some issues unresolved. Accordingly, we have restated the issues to address the unresolved questions.

## ISSUE 1

¶11 Did the District Court err when it determined that Canal did not have a duty in 1997 or 1998 to pay the Shilhaneks' undisputed medical expenses until it obtained a release for its insureds?

¶12 Canal offered to settle the Shilhaneks' claims against D-2, Cwikla and Ceklarz (hereinafter Canal's insureds) on February 27, 1998. Canal's offer provided that it would pay the Shilhaneks the policy limit of $1,000,000, in exchange for a full release of all claims against its insureds. The Shilhaneks refused to provide such a release. The case then proceeded to trial, and the Shilhaneks were awarded damages in excess of $3,000,000.

¶13 The Shilhaneks subsequently filed a cross-claim against Canal, asserting, *inter alia*, that Canal's refusal to pay their undisputed medical expenses without a release violated subsections (6) and (13) of § 33-18-201, MCA (1997). Section 33-18-201, MCA (1997), provides, in pertinent part:

4

No person may, with such frequency as to indicate a general business practice, do any of the following:

(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear[.]

. . . .

(13) fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage[.]

¶14 Our holding in *Ridley v. Guaranty Nat. Ins. Co.* (1997), 286 Mont. 325, 951 P.2d 987, is dispositive of this issue. In *Ridley*, Keith Ridley was a passenger in a vehicle that was involved in a collision. The driver of the other vehicle was insured by Guaranty National Insurance Company. *Ridley*, 286 Mont. at 327-28, 951 P.2d at 988. Guaranty admitted that its insured had the majority of fault for the accident; however, it refused to pay for Ridley's ongoing medical expenses. Ridley brought a declaratory action, requesting that the District Court determine that pursuant to § 33-18-201, MCA, Guaranty had an obligation to pay medical expenses when liability was reasonably clear, regardless of whether a final settlement had been agreed upon. The District Court declined to grant Ridley the requested relief, and Ridley appealed. *Ridley*, 286 Mont. at 328, 951 P.2d at 989.

¶15 This Court analyzed Ridley's claim in the context of § 33-18-201, MCA, and noted that the purpose of § 33-18-201, MCA, is to assure prompt payment of damages for which an insurer is clearly obligated. *Ridley*, 286 Mont. at 335, 951 P.2d at 993. Accordingly, we held that subsections (6) and (13) of § 33-18-201, MCA, require an insurer to pay an injured third party's medical expenses **before final settlement** when liability is reasonably clear. *Ridley*, 286 Mont. at 334, 951 P.2d at 992. Therefore, we reversed the order of the District

5

Court and entered declaratory judgment in favor of Ridley. *Ridley*, 286 Mont. at 338, 951 P.2d at 994-95.

¶16 Pursuant to *Ridley*, insurers are obligated to pay an injured third party's medical expenses prior to final settlement when liability for such expenses is reasonably clear. *Ridley* was decided on December 24, 1997. Consequently, Canal's obligation under *Ridley* arose on December 24, 1997. Canal does not contest the fact that its insureds are liable for the Shilhaneks' injuries. Therefore, we hold that Canal had a duty to pay the Shilhaneks' undisputed medical expenses, up to the limits of its coverage, without the benefit of a settlement agreement, after December 24, 1997.

¶17 As an alternative argument, Canal maintains that if our holding in *Ridley* imposed on it the obligation to pay the Shilhaneks' undisputed medical expenses before final settlement, such obligation was limited to the mandatory minimum coverage required by the Motor Vehicle Safety-Responsibility Act (MVRA). Section 61-6-103(2)(b)(i)-(iii), MCA (1997), a provision of the MVRA, provides that all owners and operators of motor vehicles must carry mandatory liability insurance, in the minimum amount of: (1) $25,000 because of bodily injury to or death of one person in any one accident; (2) $50,000 because of bodily injury to or death of two or more persons in any one accident; and (3) $10,000 because of injury to or destruction of property of others in any one accident.

¶18 This Court addressed the nexus between § 33-18-201, MCA, and § 61-6-103(2), MCA, in *Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, 300 Mont. 91, 3 P.3d 626. The plaintiffs in *Watters* were injured when their vehicle was involved in a collision with another vehicle. The driver of the other vehicle was insured by Guaranty National Insurance

Company for the minimum amount of coverage required by § 61-6-103(2), MCA. Guaranty investigated the accident and determined that its insured was at fault for the collision, and that the plaintiffs were entitled to recover the policy limits of $50,000. *Watters*, ¶¶ 5-6. Guaranty refused to tender policy limits, however, until the plaintiffs provided Guaranty with a full and final release of all claims. *Watters*, ¶ 12. The plaintiffs subsequently rejected Guaranty's offer, and alleged that Guaranty's actions violated § 33-18-201, MCA. *Watters*, ¶ 13.

¶19 On appeal, we determined that:

> [W]here an insured's liability for damages caused to a third party in an auto accident is reasonably clear, and those damages undisputedly exceed the mandatory limits set forth under § 61-6-103(2), MCA, it is an unfair trade practice *per se* under § 33-18-201, MCA, for an insurer to condition the payment of the owed mandatory minimum policy limits on the third party's agreement to provide a full and final release of all liability in favor of an insured.

*Watters*, ¶ 61.

¶20 However, we also noted that "our decision [in *Watters*] does not affect excess coverage that an insured chooses to carry . . . ." *Watters*, ¶ 63. Accordingly, Canal argues that *Watters* left open the question of whether an insurer's obligation under *Ridley* is limited to the minimum amount of coverage required by § 61-6-103(2), MCA. Given the facts of the instant case, we now answer this question.

¶21 Our holding in *Ridley* regarding § 33-18-201, MCA, of the UTPA, is not circumscribed by the requirements of § 61-6-103(2), MCA, of the MVRA. Thus, to interpret *Ridley* as applying only to medical expenses which are within the mandatory minimums required by the MVRA, is to interpret *Ridley* too narrowly. We further note that the UTPA

7

itself contains no reference to the MVRA. That is, the UTPA, which was enacted to regulate trade practices in the business of insurance, contains no language indicating that it is limited by the MVRA, which lists the responsibilities of vehicle owners and users. Consequently, we conclude that an insurer's obligation to pay an injured third party's undisputed medical expenses before final settlement is **not** limited to the minimum coverage required by § 61-6-103(2), MCA, of the MVRA. We further conclude that to the extent that there is language in *Watters* which might be read to imply that an insurer's obligation under *Ridley* is limited to the minimum coverage required by the MVRA, that language is overruled.

¶22 In summary, we hold that Canal had a duty to pay the Shilhaneks' undisputed medical expenses, up to the limits of its coverage and without the benefit of a settlement agreement, after December 24, 1997. As such, we reverse the District Court's grant of summary judgment to Canal with respect to this issue.

### ISSUE 2

¶23 Did Canal act in bad faith when it conditioned its payment of policy limits on the Shilhaneks providing it with a release of all claims against its insureds?

¶24 The Shilhaneks' cross-claim also alleged that Canal's refusal to tender policy limits without a release violated subsection (6) of § 33-18-201, MCA (1997). Section 33-18-201, MCA (1997), provides, in pertinent part:

> No person may, with such frequency as to indicate a general business practice, do any of the following:
>
> (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear[.]

¶25 The District Court considered the Shilhaneks' claim and determined that, pursuant to

8

our holding in *Juedeman v. National Farmers Union* (1992), 253 Mont. 278, 833 P.2d 191, Canal was not in violation of § 33-18-201(6), MCA (1997). The District Court relied on the following language from *Juedeman*:

> In this case, plaintiff refused to release [the insureds] from liability in return for payment of the policy limits. . . . This Court has held that without an agreement to release, there is no offer for settlement. *Thompson v. State Farm Mutual Automobile Ins. Co.* (1973), 161 Mont. 207, 219-220, 505 P.2d 423, 430. Here, the plaintiff's conduct prevented [the insurer] from effectuating a prompt, fair and equitable settlement. . . . Accordingly, the plaintiff has no bad faith claim against [the insurer].

*Juedeman*, 253 Mont. at 281, 833 P.2d at 193. The District Court concluded that because *Juedeman* held that it was permissible for an insurer to condition settlement upon obtaining a release of claims against its insured, Canal had not acted in bad faith, as contemplated in § 33-18-201(6), MCA (1997).

¶26    *Juedeman* was the applicable law regarding this issue until *Ridley* was decided on December 24, 1997. As we noted above, *Ridley* held that an insurer was required to pay an injured third party's **medical expenses** before final settlement when liability is reasonably clear. *Ridley*, 286 Mont. at 334, 951 P.2d at 992. What *Ridley* declined to address, however, was the payment of other types of expenses. This Court later addressed such other expenses in *Watters*, as:

> [W]here an insured's liability for damages caused to a third party in an auto accident is reasonably clear, and those damages undisputedly exceed the mandatory limits set forth under § 61-6-103(2), MCA, it is an unfair trade practice *per se* under § 33-18-201, MCA, for an insurer to condition the payment of **the owed mandatory minimum policy limits** on the third party's agreement to provide a full and final release of all liability in favor of an insured.

*Watters*, ¶ 61 (emphasis added).

9

¶27     The above holding from *Watters* expanded the requirements of *Ridley*, providing that it was a violation of § 33-18-201, MCA, for an insurer to condition the payment of owed mandatory minimum policy limits on a third party's agreement to provide a full and final release of all liability against an insured. *Watters*, ¶ 61. Thus, Canal's offer of settlement, which provided that it would not pay policy limits unless the Shilhaneks provided it with a full and final release of all claims against its insured, violated § 33-18-201, MCA. However, *Watters* was decided on June 6, 2000. Canal made its offer of settlement to the Shilhaneks on February 27, 1998. Accordingly, Canal has raised a defense under § 33-18-242(5), MCA (1997).

¶28     Section 33-18-242, MCA (1997), provides, in pertinent part:

> (1) An insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201.
>
> . . . .
>
> (5) An insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue.

¶29     We addressed § 33-18-242(5), MCA, in *Watters*, when the insurer, relying on *Juedeman*, also refused to tender policy limits in the absence of a release of all claims against its insured. The plaintiffs in *Watters* responded by asserting that the insurer's actions violated § 33-18-201(6), MCA. On appeal, we concluded that the insurer had a defense to the plaintiffs' claim under § 33-18-242(5), MCA, as:

> [A]t the time this dispute arose, *Juedeman* was the lone precedent from Montana case law upon which [the insurer] could rely under the circumstances. . . . We must therefore conclude that a plain reading of the

10

available case law at the time gave [the insurer] a reasonable basis in law upon which it could deny payment of policy limits. That is, *Juedeman* was legally conclusive to the extent there was simply no other authority in Montana at the time suggesting that in order to effectuate a prompt, fair, and equitable settlement of a third-party claim in good faith, an insurer must, under certain circumstances, pay policy limits without a full and final release for its insured.

*Watters*, ¶¶ 71-72.

¶30 In this case, Canal made its offer of settlement to the Shilhaneks over two years before *Watters* was decided. Consequently, like the insurer in *Watters*, Canal had an arguably reasonable basis in law for asserting that it was entitled to condition its payment of policy limits on the Shilhaneks providing it with a release of all claims against its insureds. Therefore, pursuant to § 33-18-242(5), MCA (1997), we conclude that Canal cannot be held liable for acting in bad faith in violation of § 33-18-201(6), MCA (1997).

¶31 In light of our above conclusion, we hold that Canal did not violate § 33-18-201(6), MCA (1997), when it attempted to condition its payment of policy limits on the Shilhaneks providing it with a release of all claims against its insureds. Accordingly, we affirm the District Court's grant of summary judgment to Canal with respect to this issue.

¶32 Further, so as to fully and finally clarify the law in this regard, we hereby hold that *Juedeman*, which was overruled in part by both *Ridley* and *Watters*, is overruled in its entirety. We further hold that nothing in the UTPA requires a general release of the insured or the insurer as a condition to a § 33-18-201(6) or (13), MCA, settlement.

**ISSUE 3**

¶33 Did the District Court err when it granted Canal's motion for summary judgment with respect to the Shilhaneks' claim that Canal violated § 33-18-201(4), MCA (1997)?

11

¶34 The Shilhaneks maintain that on the date of the accident, Officer Gary McVay of the Billings Police Department completed a thorough investigation of the collision and determined that Ceklarz was entirely at fault. The Shilhaneks further allege that neither Canal nor its employees ever contacted Officer McVay to obtain the results of his investigation. Finally, the Shilhaneks contend that although they repeatedly provided Canal with medical documentation regarding Roxy and Corey's injuries, Canal refused to make advance payments to the Shilhaneks to cover their medical expenses. Consequently, the Shilhaneks assert that Canal's conduct was in violation of § 33-18-201(4), MCA (1997), which provides:

> No person may, with such frequency as to indicate a general business practice, do any of the following:
>
> (4) refuse to pay claims without conducting a reasonable investigation based
>
> upon all available information[.]

¶35 The District Court examined the Shilhaneks' claim and determined that Canal had attempted to discover the amount of the Shilhaneks' outstanding medical expenses. The District Court further determined that although the Shilhaneks failed to provide Canal with information regarding their outstanding medical expenses, Canal forwarded a check in the amount of $5,000 to the Shilhaneks to cover outstanding medical expenses, which the Shilhaneks rejected. Accordingly, the District Court concluded that Canal had not violated § 33-18-201(4), MCA (1997), and granted Canal's motion for summary judgment with regard to this issue.

¶36 We note however, that the District Court neglected to address the Shilhaneks'

12

contention that Canal declined payment without first conducting a reasonable investigation. Summary judgment is proper only where there is no genuine issue as to any material fact. Rule 56(c), M.R.Civ.P. The party moving for summary judgment has the burden of establishing that no genuine issue of fact exists, and only when that burden is met does the burden shift to the opposing party to show that there is a genuine issue as to some material fact. *Walker v. St. Paul Fire & Marine Ins.* (1990), 241 Mont. 256, 258, 786 P.2d 1157, 1159.

¶37 We conclude that Canal did not meet its burden in the instant case. That is, the record before the District Court illuminated several material facts in dispute between the parties regarding Canal's potential violation of § 33-18-201(4), MCA (1997), including Canal's failure to obtain Officer McVay's police report. Therefore, we conclude that this issue was not properly resolved with summary judgment. Accordingly, we reverse the District Court's grant of summary judgment to Canal with respect to this issue, and remand this issue to the District Court for trial on the merits of the Shilhaneks' claim.

¶38 For the foregoing reasons, the judgment of the District Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ JIM RICE

13

// C. B. McNEIL
Honorable C. B. McNeil, District Judge,
Sitting in place of Justice Jim Regnier

Justice James C. Nelson concurring and dissenting.

¶39    Although I concur in Issues 2 and 3, I do not agree with the majority's analysis or decision as to Issue 1. Specifically, it is my view that *Ridley's* discussion of § 33-18-201, MCA, of the UTPA was circumscribed by the requirements of § 61-6-103(2), MCA, of the MVRA. In point of fact we stated:

> Furthermore, our interpretation of subsection (6) is more consistent with the purpose of § 33-18-201, MCA, which is to assure prompt payment of damages for which an insurer is clearly obligated. It is also more consistent with this state's public policy, as established by the "mandatory liability protection" provisions of Montana law found at §§ 61-6-301 to -304, MCA. We have held that "[i]t is clear that the mandatory liability insurance law seeks to protect members of the general public who are innocent victims of automobile accidents." *Iowa Mut. Ins. Co. v. Davis* (1988), 231 Mont. 166, 170, 752 P.2d 166, 169.
>
> One of the most significant obligations that innocent victims of automobile accidents incur and for which mandatory liability insurance laws were enacted, is the obligation to pay the costs of medical treatment. If the insurer has no obligation to pay those expenses in a timely fashion, even though liability is reasonably clear, then the protection provided by Montana's mandatory liability laws would be of little value.
>
> Medical expenses from even minor injuries can be devastating to a family of average income. The inability to pay them can damage credit and, as alleged in this case, sometimes preclude adequate treatment and recovery from the very injuries caused. Just as importantly, the financial stress of being unable to pay medical expenses can lead to the ill-advised settlement of other legitimate claims in order to secure a benefit to which an innocent victim of an automobile accident is clearly entitled. We conclude that this is not what was intended by the Montana Legislature when mandatory liability insurance laws and unfair claims practice laws were enacted.

*Ridley v. Guaranty Nat. Ins. Co.* (1997), 286 Mont. 325, 335, 951 P.2d. 987, 993.

¶40    Nothing in *Ridley* suggests, much less requires, that it applies to coverage in excess of the mandatory minimums of the MVRA. Indeed, the proposition for which *Ridley* is now

15

being cited--i.e., that § 33-18-201, MCA, of the UTPA was not circumscribed by the requirements of § 61-6-103(2), MCA, of the MVRA--was not even at issue in *Ridley*.

¶41    I submit that this interpretation is further supported by and consistent with this Court's decision in *Dubray v. Farmers Ins. Exchange*, 2001 MT 251, ¶ 14-15, 307 Mont. 134, ¶ 14-15, 36 P.3d 897, ¶ 14-15, wherein we stated:

> The essence of our holding in *Ridley* is that where liability is reasonably clear, injured victims are entitled to payment of those damages which are not reasonably in dispute without first executing a settlement agreement and final release.  In arriving at this conclusion, we relied on Montana's public policy of protecting innocent victims of automobile accidents, as established by the "mandatory liability protection" provisions found at §§ 61-6-301 to -304, MCA.  We noted that "[i]t is clear that the mandatory liability insurance law seeks to protect members of the general public who are innocent victims of automobile accidents." *Ridley*, 286 Mont. at 335, 951 P.2d at 993 (citations omitted.)  Finally, we concluded that *"[o]ne of the most significant obligations* that innocent victims of automobile accidents incur and for which mandatory liability insurance laws were enacted, is the obligation to pay the costs of medical treatment." [Emphasis in original.]
>
> Nothing in *Ridley* suggests that its scope should be categorically limited to medical expenses.  Rather, medical expenses are just one of the obligations incurred by victims that mandatory liability insurance laws were designed to alleviate.  Lost wages which are reasonably certain and directly related to an insured's negligence or wrongful act are another example.

¶42    It seems to me that both *Ridley* and *Dubray* were tied into the limits of the MVRA.  And, while it may be argued that the above-quoted language is dicta, I am not persuaded that those who read and relied on those opinions necessarily read the quoted language in the context that we are now interpreting it.

¶43    That we have now chosen to advance the *Ridley, Watters* and *Dubray* rationale the next incremental step--i.e., that the plain language of the UTPA is not circumscribed by the

16

plain language of the MVRA--is based on that argument which was finally raised in this case, but not, in my view, in the foregoing trilogy. That is why the language at ¶ 61 in *Watters v. Guaranty Nat. Ins. Co.,* 2000 MT 150, 300 Mont. 91, 3 P.3d 626, which we now overrule, was included in our Opinion. *See Watters,* ¶ 30.

¶44    I would provide Canal a § 33-18-242(5), MCA, defense; therefore, I dissent as to Issue 1.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray and Justice W. William Leaphart join in the foregoing concurrence and dissent.

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART

17

Justice Terry N. Trieweiler concurring and dissenting.

¶45    I join the majority's resolution of issues 1 and 3.

¶46    I concur with the majority's conclusions that following our decision in *Ridley v. Guaranty Nat. Ins. Co.* (1997), 286 Mont. 325, 951 P.2d 987, the Defendant, Canal Insurance Company had a duty to pay the Plaintiffs their undisputed medical expenses without the benefit of a release for its insureds.  I also concur with the majority's conclusions that Canal's obligation arose from §§ 33-18-201(6) and (13), MCA (1997), and was independent of any obligation established by the Motor Vehicle Safety-Responsibility Act; to the extent it is  inconsistent, our decision in *Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, 300 Mont. 91, 3 P.3d 626, should be reversed; and, that our decision in *Juedeman v. National Farmers Union* (1992), 253 Mont. 278, 833 P.2d 191, should be reversed in its entirety.  Finally, I concur with the Court's conclusion that the District Court erred when it granted summary judgment with respect to the Plaintiffs' claim that Canal breached its duty to conduct a reasonable investigation pursuant to § 33-18-201(4), MCA (1997).

¶47    However, I dissent from the majority's conclusion that Canal had a reasonable basis in law or fact for contesting the Shilhaneks' claim even after our decision in *Ridley*.  To the extent that the *Watters* decision suggests otherwise, that was not my intent when I joined it.

¶48    In analyzing the issues presented in this case, it is important to keep in mind that the insurer's obligation to pay claims for which liability is reasonably clear does not originate with *Ridley*.  The source of the obligation is § 33-18-201(6), MCA.  (Part of what is known as the Unfair Claims Practices Act.)  All this Court did in *Ridley* is interpret the word

18

"settlements" as used in that section. *Ridley* was not based on the nature of damages being claimed, nor the amount of liability insurance available, nor the Motor Vehicle Safety-Responsibility Act which is found at Title 61, Chapter 6, and pertains to an entirely different subject. (The minimum amount and types of liability insurance that motor vehicle owners and operators are required to carry.) All we held in *Ridley* is that "settlements" as used in § 33-18-201(6), MCA, do not require a release.

¶49　　The question then, following *Ridley*, is whether §§ 33-18-201(6) or (13), MCA, by themselves provide any basis for limiting the insurer's obligation to a specific type of claim or to claims against insureds who have only mandatory minimum amounts of liability insurance coverage. The simple answer is that there is no such language in the statute. Insurers have tried to add that language on a case-by-case basis.

¶50　　We have had to repeatedly deal with this issue not only in the cases cited by the majority, but in *DuBray v. Farmers Ins. Exchange*, 2001 MT 251, 307 Mont. 134, 36 P.3d 897. In that case, the insurer contended that *Ridley* applied only to medical bills. We held otherwise. We had to deal with the issue in *Watters* because the insurance company argued that § 33-18-201(6), MCA, should not apply where the settlement would exhaust policy limits. We discussed the obligation in terms of the mandatory liability coverage statute because that is the context in which it was presented to us. However, both of these arguments were far fetched and in no way justified by the language of §§ 33-18-201(6) or (13), MCA. The statute, itself, simply places no limit on an insurer's obligation. The only limits are whether there is a reasonable dispute about the amount of damage or liability and

19

the terms of the insurer's policy with its insured.

¶51    In this case, Canal argues that it had a right to rely on *Juedeman* because the portion of that decision which conditioned an insurer's obligation to pay on a settlement agreement was not reversed by *Ridley*. The simple answer is that there is no actual discussion of § 33-18-201, MCA, in that case which could have been analyzed or reversed. The Court simply held in *Juedeman*, 253 Mont. at 281, 833 P.2d at 193, based on the facts that the "plaintiff's conduct prevented Farmers Union from effectuating a prompt, fair and equitable settlement." There is no discussion in that case of what "settlement" meant or how the Court otherwise arrived at its conclusion. In *Ridley*, we explained for the first time what "settlements" means in the context of § 33-18-201(6), MCA.

¶52    The reason *Watters* was limited to the Motor Vehicle Safety-Responsibility Act is simple. In that Opinion, we stated:

> As argued by both parties, this issue must first be properly cast within the framework of Montana's Motor Vehicle Safety-Responsibility Act.

*Watters*, ¶ 28.

¶53    The parties in *Watters* apparently chose to limit their arguments to policies provided in satisfaction of the Motor Vehicle Safety-Responsibility Act because that is the policy that was at issue in *Watters* and because of the bolstering language used in *Ridley* which listed the act as another example of the legislature's intent that innocent third-party victims be protected. However, there is nothing in the rationale of the *Watters* decision for limiting its application to cases involving mandatory minimum liability coverage. We rejected the argument that a full and final release was required before the obligation to pay arose based,

20

once again, on the plain language of § 33-18-201(6), MCA.

¶54    In *DuBray*, the insurer insisted that *Ridley* only applied to medical bills because medical bills were what had been involved in *Ridley*. However, we held that the rationale in *Ridley* was equally applicable to wage loss. In *DuBray*, wage loss was the issue presented to us.

¶55    The issue here is not what shelter from the law can be found in isolated language specific to the facts of each of our prior cases. The issue is simply what is required of a law-abiding insurer pursuant to §§ 33-18-201(4)(6) and (13), MCA. To me, that has been abundantly clear since December 24, 1997, the date of our decision in *Ridley v. Guaranty National Ins. Co.*

¶56    For these reasons, I concur in part with, and dissent in part from, the majority Opinion.

/S/ TERRY N. TRIEWEILER