JUSTICE NELSON
concurring and dissenting.
¶39 Although I concur in Issues 2 and 3, I do not agree with the majority’s analysis or decision as to Issue 1. Specifically, it is my view that Ridley’s discussion of § 33-18-201, MCA, of the UTPA was circumscribed by the requirements of § 61-6-103(2), MCA, of the MVRA. In point of fact we stated:
Furthermore, our interpretation of subsection (6) is more consistent with the purpose of § 33-18-201, MCA, which is to assure prompt payment of damages for which an insurer is clearly obligated. It is also more consistent with this state’s public policy, as established by the “mandatory liability protection” provisions of Montana law found at §§ 61-6-301 to -304, MCA. We have held that “[i]t is clear that the mandatory liability insurance law seeks to protect members of the general public who are innocent victims of automobile accidents.” Iowa Mut. Ins. Co. v. Davis (1988), 231 Mont. 166, 170, 752 P.2d 166, 169.
One of the most significant obligations that innocent victims of automobile accidents incur and for which mandatory liability insurance laws were enacted, is the obligation to pay the costs of medical treatment. If the insurer has no obligation to pay those expenses in a timely fashion, even though liability is reasonably clear, then the protection provided by Montana’s mandatory liability laws would be of little value.
Medical expenses from even minor injuries can be devastating to a family of average income. The inability to pay them can damage credit and, as alleged in this case, sometimes preclude adequate treatment and recovery from the very injuries caused. Just as importantly, the financial stress of being unable to pay medical expenses can lead to the ill-advised settlement of other legitimate claims in order to secure a benefit to which an innocent victim of an automobile accident is clearly entitled. We conclude that this is not what was intended by the Montana Legislature when mandatory liability insurance laws and unfair claims practice laws were enacted.
Ridley v. Guaranty Nat. Ins. Co. (1997), 286 Mont. 325, 335, 951 P.2d. 987, 993.
¶40 Nothing in Ridley suggests, much less requires, that it applies to coverage in excess of the mandatory minimums of the MVRA. Indeed, *531 the proposition for which Ridley is now being cited-i.e., that § 33-18-201, MCA, of the UTPA was not circumscribed by the requirements of § 61-6-103(2), MCA, of the MVRA-was not even at issue in Ridley.
¶41 I submit that this interpretation is further supported by and consistent with this Court’s decision in Dubray v. Farmers Ins. Exchange, 2001 MT 251, ¶ 14-15, 307 Mont. 134, ¶ 14-15, 36 P.3d 897, ¶ 14-15, wherein we stated:
The essence of our holding in Ridley is that where liability is reasonably clear, injured victims are entitled to payment of those damages which are not reasonably in dispute without first executing a settlement agreement and final release. In arriving at this conclusion, we relied on Montana’s public policy of protecting innocent victims of automobile accidents, as established by the “mandatory liability protection” provisions found at §§ 61-6-301 to -304, MCA. We noted that “[i]t is clear that the mandatory liability insurance law seeks to protect members of the general public who are innocent victims of automobile accidents.” Ridley, 286 Mont. at 335, 951 P.2d at 993 (citations omitted.) Finally, we concluded that “[o]ne of the most significant obligations that innocent victims of automobile accidents incur and for which mandatory liability insurance laws were enacted, is the obligation to pay the costs of medical treatment.” [Emphasis in original.]
Nothing in Ridley suggests that its scope should be categorically limited to medical expenses. Rather, medical expenses are just one of the obligations incurred by victims that mandatory liability insurance laws were designed to alleviate. Lost wages which are reasonably certain and directly related to an insured’s negligence or wrongful act are another example.
¶42 It seems to me that both Ridley and Dubray were tied into the limits of the MVRA. And, while it may be argued that the above-quoted language is dicta, I am not persuaded that those who read and relied on those opinions necessarily read the quoted language in the context that we are now interpreting it.
¶43 That we have now chosen to advance the Ridley, Watters and Dubray rationale the next incremental step-i.e., that the plain language of the UTPA is not circumscribed by the plain language of the MVRA-is based on that argument which was finally raised in this case, but not, in my view, in the foregoing trilogy. That is why the language at ¶ 61 in Watters v. Guaranty Nat. Ins. Co., 2000 MT 150, 300 Mont. 91, 3 P.3d 626, which we now overrule, was included in our *532 Opinion. See Watters, ¶ 30.
¶44 I would provide Canal a § 33-18-242(5), MCA, defense; therefore, I dissent as to Issue 1.
CHIEF JUSTICE GRAY and JUSTICE LEAPHART join in the foregoing concurrence and dissent.