OPINION
DESMOND, Justice.
On May 12, 1997, as part of their coursework in heavy equipment operation, three Salish Kootenai College, (“SKC”), students, Appellant James Smith, Shad Bur-land and James Finley, were traveling in a dump truck owned by the college on U.S. Highway 93, a state highway within the exterior boundaries of the Flathead Indian Reservation.[1] Appellant Smith was driving. Tragically, a single vehicle rollover occurred. Shad Burland was killed and both James Finley and Appellant Smith were injured.
Appellant Smith is a member of the Umatilla Tribe. Shad Burland was, and James Finley is, enrolled in the Confederated Salish and Kootenai Tribes (“Tribes”). Legal claims of Mr. Burland’s estate and Mr. Finley were resolved short of a trial.
Mr. Smith’s claims against SKC were tried to a jury that, on September 29, 2000, after a weeklong trial, returned a verdict in favor of SKC.[2] Further proceedings in both the trial and appellate courts ensued concerning Mr. Smith’s contention that the Tribal Trial Court lacked subject matter jurisdiction over the matter.
On February 17, 2003, we decided the jurisdictional portion of this appeal. We held that Federal Indian law did not preclude the Tribal Court from exercising jurisdiction over a tort action involving three students of the Tribes’ Salish Kootenai College who were riding in a college vehicle as a part of their regular studies at the college when it crashed.
In our jurisdictional decision, we stated that we would determine the merits of the appeal without oral argument unless either party requested oral argument. Appellant Smith requested oral argument and the parties argued the merits of the appeal on April 25, 2003.
On the day of the oral argument. Appellant Smith filed a Motion pursuant to Rule 13, of the Tribal Rules of Appellate Procedure, to stay the proceedings in this Court pending the outcome of a jurisdictional challenge in the federal court system. Appellant Smith contended that fiscal and judicial economy would be promoted by a stay of this Court’s proceedings. In view of the fact that the Motion was presented to this Court at oral argument, we reserved ruling on the Motion. Following oral argument, SKC filed a brief in opposition to the Motion for stay.
While fiscal and judicial economy are important to this, and any Court, we do not see how either of these interests would be promoted by a stay at this stage of the proceedings. A jury trial has been held. A post-trial jurisdictional challenge has been determined, both by the Trial Court and by this Court. Issuance of our decision on the merits will simply terminate *38 the Tribal Court proceedings. As indicated above, Appellant Smith had already filed a Federal Court proceeding before oral argument. This was pending in the U.S. Court of Appeals at the time of oral argument and is apparently still pending. In view of this, Appellant Smith has not shown how staying the Tribal Appellate proceedings would support fiscal or judicial economy. Therefore, Appellant’s Motion for a stay is now denied.
Before addressing Appellant Smith’s specific points of appeal, some general comments are in order. Appellant Smith raises seven issues on appeal and contends that he was also denied a fair trial as a result of each error. A careful review of the trial transcript reveals otherwise. Appellant Smith was afforded a lengthy, carefully-conducted trial. The Court took the case seriously, as shown by its management of the trial and thoughtful consideration of the parties’ legal arguments prior to, during and following the trial. After hearing a great deal of evidence, some of it inconsistent and some of it complicated expert testimony, the jury found that SKC was not negligent. Under the Constitution and laws of the Confederated Salish and Kootenai Tribes and relevant provisions of the Indian Civil Rights Act, Appellant Smith is entitled to a fair trial. He is not entitled to a perfect trial or to prevail at trial. See, e.g., United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), (criminal eases.) Appellant Smith was provided a fair trial. We affirm the Tribal Trial Court in accordance with the following-
Appellant Smith makes the following arguments in support of his appeal on the merits:
1.The Tribal Trial Court erred when it declined to issue a curative instruction regarding SKC’s investigatory notes.
2. The Tribal Trial Court erred when it disallowed Smith’s use of testimony regarding Gordon Bartell’s statements.
3. The Tribal Trial Court erred when it refused Smith’s jury instructions regarding violations of laws and regulations as negligence per se or evidence of negligence.
4. The Tribal Trial Court erred when it refused Smith’s jury instructions regarding “unavoidable accidents.”
5. The Tribal Trial Court erred when it prohibited questions to witnesses and potential jurors regarding insurance.
6. The Tribal Trial Court erred when it ruled that SKC was owned by the Tribes.
7. There was insufficient evidence to support the jury verdict.
1. SKC’s investigatory notes.
At trial, Appellant Smith called as a witness Robert VanGunten, SKC’s Director of Adult and Continuing Education. Mr. VanGunten testified concerning SKC’s investigation of the accident. He stated that he had interviewed students and that he had taken notes of the interviews. However, no notes were produced in the course of discovery even though Appellant Smith had served SKC with a subpoena duces tecum directing it to produce all documents concerning the investigation. Counsel pursued the issue outside of the presence of the jury. Mr. VanGunten testified that he had attempted to find the notes but was unable to do so. Transcript, (“TR”), Vol. 2, p. 14, lines 13-25, p. 15, lines 1, 12-17.
Understandably concerned about SKC’s inability to produce the notes, and skepti *39 cal about possible motives, Appellant Smith’s counsel requested that the jury be instructed, “if a party had better evidence of the events or the information that existed at the time and they failed to produce it, then that could be viewed with distrust.” TR, Vol. 2, p. 17, lines 20-25. The Court declined the instruction, stating that the question of the whereabouts of any notes had been “asked and answered by the witness.” TR, Vol. 2, p. 18, lines 13-16.
At the beginning of the trial, the Court had instructed the jury as follows:
If weaker and less satisfactory evidence is offered and it appears that it is within the power of the party to offer stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.
TR. Vol. 1, p. 91, lines 22-25, p. 92, line 1. Appellant Smith contends that this instruction was insufficient to address the issue because it was given before the jury heard that Mr. VanGunten had made notes he was no longer able to locate and also because the emphasis should be on SKC’s failure to produce the evidence, rather than offering “less satisfactory evidence.” Appellee SKC asserts that this pretrial instruction adequately covered the issue. We agree.
When a standard of review has not been established by tribal law or prior court decision, we may look to the standard of review adopted by other courts. Bick v. Pierce, 23 Ind. Law. Rep. 6175, 6176 (CS & K Court of Appeals 1996). The standard of review we will apply to a trial court’s decision on a jury instruction is abuse of discretion. See, Finstad v. W.R. Grace, 2000 MT 228, 301 Mont. 240, 8 P.3d 778 (2000).
Further, we will apply the reasoning of the Court in Schuff v. A.T. Klemens & Son, which stated, “In reviewing for abuse of discretion, the reviewing court does not determine whether it agrees with the trial court. Rather, it considers whether the trial court, in its exercise of discretion, acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason in view of all circumstances.” Schuff, 2000 MT 357, 303 Mont. 274, 16 P.3d 1002 (2000).
We find no abuse of discretion here. After hearing the evidence, the Trial Judge apparently concluded that the facts did not support one premise of the proposed instruction, i.e., that it was “within the power of the party to offer stronger and more satisfactory evidence.” The trial judge evidently believed Mr. VanGunten’s testimony that he simply was unable to locate any notes as opposed to Appellant Smith’s assumption that “SKC concealed or destroyed the notes because they supported his theory of how and why this rollover happened.” Appellant’s Brief, p 13. Appellant Smith’s characterization of Mr. VanGunten’s actions as “deceptive behavior,” “discovery abuse,” and “a surprise revelation that it [SKC] concealed and destroyed evidence,”[3] are not supported. The Trial Judge’s ruling did not deny Appellant Smith a fair trial.

2. Gordon, BartelTs statements.

Prior to the trial, answering Appellant Smith’s Motion, the Trial Judge ruled statements of the late Gordon Bartell were inadmissible. Mi-. Bartell was an instructor in the commercial driving program who assigned the three students their duties the day of the accident. (Mr. Bartell died before the trial.) At trial, Appellant Smith attempted to present testimony that SKC, through Mr. Bartell, had expressly directed him to drive on the day of the accident. *40 The Court then, again, ruled the evidence inadmissible.[4] Appellee SKC contends that the Trial Court’s ruling was correct.
The Trial Court did not abuse its discretion. Evidence on this contested issue was presented to the jury. The substance of Mr. Bartell’s testimony was admitted into evidence in a statement made by Mr. Finley to a Montana Highway Patrol Office on the day of the accident. Plaintiffs Exhibit 26. TR, Vol. 2, p. 90 lines 13-15.[5] Appellant Smith’s counsel was aware that the jury had been given this information because he stated, in his closing argument,
I think there’s been some discussion about the report that was passed around for you to read, the voluntary statement taken [sic] by James Finley at the hospital by Gordon the instructor, [sic] We know that this truck was first driven, on the statement it was driven by Shad Burland. But on instructions at the beginning of the day, at the beginning of the workday when Gordon, the instructor, was assigning daily duties to all, he told Shad Burland and James Smith to alternate drivers throughout the day.
TR, Vol. 5, p. 42, lines 2-10.
Appellant Smith contends that the Court should have permitted Mr. Finley and Appellant Smith to testify directly on this subject. Although we agree with Appellant Smith that this question is relevant to the negligence issue, not just the comparative negligence issue, we find no error. The jury was presented evidence from Mr. Finley through the Highway Patrol report that Mr. Bartell directed Appellant Smith to drive. Appellant Smith’s counsel reminded the jury of this in his closing argument. The jury’s conclusion that SKC was not negligent is not necessarily inconsistent with that evidence.
3. Smith’s proposed jury instructions regarding violations of laws and regulations as negligence per se or ev idence of negligence.
Appellant Smith’s proposed jury instructions numbers 4 and 5[6] stated that violation of selected Federal Motor Carrier Safety Regulations adopted in Montana under § 44—1—1005(l)(b), Mont.Code Ann. would be negligence per se. Appellant Smith’s proposed instructions numbers 36 and 37[7] stated that violations of regulatory standards other than law is evidence of negligence.
The regulations in question require regular inspection and maintenance of commercial motor vehicles and prohibit the use of commercial motor vehicles with, among other things, a cracked or broken leaf spring or a steering wheel “free play” thirty degrees or higher.[8] The Trial Court refused the instructions.
For several reasons the Trial Court’s decision was not an abuse of discretion. First, the jury was instructed adequately as to the duty of a vehicle owner to inspect and maintain his or her vehicle. Jury Instruction No. 24 addressed a vehicle owner’s duty to:
exercise reasonable care to see that his vehicle is in reasonably safe and proper condition and must exercise reasonable *41 care m the inspection of his vehicle to discover any defects which may prevent proper operation, and he is chargeable with knowledge of any defects which such inspection would disclose. He is thus liable for injuries which are shown to have resulted from conditions which he knew or should have known were so unsafe as to endanger others using the highways even though the particular injury in question may not have been foreseen.
TR. Vol. 5, p. 24, lines 3-14.
Second, as is outlined in the Restatement of the Law, Second, Torts,[9] the general standard of conduct required in tort law is that of a “reasonable prudent person under like circumstances.” § 874A, Comment e. Adoption of a more specific standard, when found in statutory or regulatory law, does not change the law of negligence, rather, “the expression of the standard of care in certain fact situations is modified; it is changed from a general standard to a specific rule of conduct.” Id. The Trial Court clearly explained to the jury the general standard of care, i.e. the duty of inspection and maintenance. It chose not to accept Appellant Smith’s proposed statement of a more specific rule of conduct.
Third, the Trial Court could have reasonably concluded that, in any event, Appellant Smith’s contention regarding the applicability of the federal law and regulations was not correct. The Federal Motor Carrier Safety Regulations apply to vehicles “used in commerce.” Mont.Code Ann. § 44-l-1005(b). That section provides in relevant part:
(1) The department of justice shall:
(b) provide standards for the safe operation of all motor vehicles used in commerce that exceed 26,000 pounds gross vehicle weight,
The Montana Department of Justice implemented this statutory limitation in § 23.5.102(1), A.R.M. which states in relevant part:
Any commercial motor vehicle ... subject to regulation by the department under 44-1-1005, MCA, shall comply with and the department does hereby adopt, by reference, the following portions of the federal motor carrier safety regulations of the department of transportation.
The federal regulations promulgated pursuant to the Federal Motor Carrier Safety Act similarly limit their coverage. Section 49 C.F.R. 390.5 defines “motor carrier” as, “a for hire motor carrier or a private motor carrier”. The regulation defines a “for hire motor carrier” as “a person engaged in the transportation of goods or passengers for compensation.” Private motor carrier is defined as, “a person who provides transportation of property or passengers by commercial motor vehicle.” The vehicle involved in the accident here, as a vehicle used for educational purposes, does not fit within this definition.
Thus, the jury was instructed on SKC’s duty to inspect and maintain its vehicles and the Trial Court’s decision to refuse jury instructions 4, 5, 36 and 37, was not in error.

U. Smith’s proposed jury instructions regarding “unavoidable accidents. ”

On at least four occasions, in voir dire, his opening statement and his closing statement, SKC’s counsel stated that what happened on May 12, 1997 was “just an accident,” or words to that effect. He also asked the Montana Highway Patrol Officer *42 if he had seen, “some accidents that are not anybody’s fault.” (The officer replied, only once when a rock fell on a vehicle.)
Appellant Smith did not object at trial to any of the statements or the question to the highway patrol officer. He did, however, request proposed Jury instruction No. 33, which provided:
The law does not recognize an unavoidable accident. The question you must decide is whether the defendant was negligent, and if so, what damages were caused by defendant’s negligence.
Appellant Smith contends this instruction should have been given to “neutralize SKC’s improper statements that accidents sometimes just happen.” Appellant’s Brief, p. 24.
Again applying the standard of review of abuse of discretion, we find no such abuse in the trial court’s refusal of this instruction. Appellant Smith’s interpretation of the Montana case law he cites is incorrect in this circumstance. Unlike the cases Appellant Smith cites, in this proceeding SKC did not request an unavoidable accident instruction and the trial judge did not give one. In fact, the jury heard the highway patrol officer’s testimony, which had the same meaning as Jury Instruction No. 33. Furthermore, SKC’s counsel’s statements and questions were not improper. We find no error.
5. The Trial Court’s prohibition of questions to witnesses and potential jurors regarding insurance.
Prior to trial, the Trial Court granted SKC’s Motion in Limine prohibiting questions to witnesses and potential jurors regarding insurance, relying on Rule 411, Fed.R.Evid.[10] This Rule prohibits reference to liability insurance because of its irrelevance and the belief “that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds.” Notes of Advisory Committee on Rules, Rule 411. (Citations Omitted.)
Appellant Smith presents no argument or theory that supports questioning witnesses about insurance in this case in the face of the general evidentiary rule against it. He cites a Montana Supreme Court case, Garza v. Peppard,, 222 Mont. 244, 722 P.2d 610 (1986), in support of questioning jurors about insurance. However, in that case, the Montana Supreme Court, on an abuse of discretion standard of review, merely upheld a trial court’s permitting such questioning in the factual circumstances of that matter. The Montana Supreme Court did not change the general rule against prohibiting questions to witnesses and potential jurors regarding insurance in Garza v. Peppard, We will not disturb the longstanding reasoning applicable to following Rule 411 Fed.R.Evid.

6. SKC was owned by the Tribes.

Prior to the trial the Trial Court ruled that § 4-2~204(2)(b), CSK & T Laws Codified applies in this matter.[11] That provision states, in relevant part:
(2) Limitations on tort recovery. Except as may be otherwise provided by law ... when a corporation in which the tribes are an owner is found liable under the terms of this ordinance, the damages available to a prevailing party are limited as follows:
[[Image here]]
(b) For claims arising from a single transaction or occurrence, a plaintiff may not recover a total compensatory sum greater than Two Hundred and Fif *43 ty Thousand Dollars ($250,000) or the maximum sum payable by an insurer under any policy required by federal law, whichever is less.
Thus, under the Trial Court’s ruling, had he prevailed at trial, Appellant Smith’s recovery would have been limited to $250,000. However, Appellant Smith did not prevail at trial. The jury was not made informed of the Trial Court’s ruling. Since it found no negligence on the part of SKC, the jury did not proceed further and thus did not determine damages.
No reversible error occurred. When the jury deliberated, it was unaware of the Court’s ruling under 4-2-204(2)(b) CSKT Laws Codified. Thus Appellant Smith’s efforts to connect the Court’s ruling on this provision to concerns that certain jurors may have possibly tried to protect the Tribe, as opposed the SKC are not persuasive. As for the basis of the Court’s ruling, we cannot find it incorrect as a matter of law. In our February 17, 2003 decision on jurisdiction, we found the legal status of SKC relevant for purposes of determining subject matter jurisdiction and further found that “SKC is a tribal entity closely associated with and controlled by the Tribes”. For purposes of determining jurisdiction, it must be treated as a tribal entity.[12]

7. Sufficiency of evidence to support the jury verdict.

Appellant Smith asserts that the jury’s verdict was not supported by sufficient evidence. To the contrary, a review of the transcript indicates that sufficient evidence supported the jury’s verdict. Evidence in support of Appellant Smith’s theory of negligence was countered or explained by evidence presented by SKC. Appellant Smith’s principle contentions, i.e., that SKC was negligent in its alleged failure to inspect and maintain the vehicle were countered by witnesses and credible expert testimony. Thus it would not be proper for this Court to substitute its judgment for that of the jury.
CONCLUSION
As we stated in Bartell v. Kerr,
The jury was properly instructed on the issues under review. It made its decision on evidence that may have sup- . ported a contrary finding, but arriving at a conclusion in the midst of conflicting evidence is a jury’s prime task.
Bartell v. Kerr, CSKT Court of Appeals, AP-94-104-CV, July 29, 1996 slip op. at 11.
Appellant Smith is dissatisfied with the jury’s verdict. However, Appellant Smith was afforded a fair trial and we find no error.
Chief Justice MORAN and Justice MATT concur in this decision.

. In our February 17, 2003 decision, we set forth the underlying facts. We will not repeat them in full here but will refer to them in our discussion, as necessary.

. Tribal Trial Judge Winona Tanner’s final Pretrial Order described the issues of fact to be tried regarding liability as follows:
(1) Was Defendant Salish-Kootenai College negligent and, if so, was its negligence a cause of Plaintiff’s damages, if any?
(2) Was Plaintiff [Smith] contributarilv or comparatively negligent and if so, was his negligence a cause of his damages, if any?

. Decision on Motions, September 13, 2000.

. Decisions on Hearsay Issues Regarding Statements of Gordon Bartell. September 27, 2000.

. See also, TR 9-28-00 pp 7-12.

. Exhibits 8 and 9, Appellant's Brief.

. Exhibits 11 and 12, Appellant's Brief.

.Appellant Smith’s trial evidence pointed to the possibility of the accident’s having been caused by a cracked or broken leaf spring, or excessive steering wheel free play. Appellant SKC presented evidence in opposition to these theories.

. We apply this statement of the law under § 4-1-104, CSKT Laws Codified.

. Applicable under § 4-1-104, CSKT Laws Codified.

. Decision on Motions, September 13, 2000.

. We also stated "Our holding is consistent with the Montana Federal District Court’s characterization of SKC in Bartell v. American Home Assurance Company, i.e., that the ‘Salish-Kootenai College is incorporated as a Tribal non-profit corporation located within the Flathead Reservation.’ August 10, 2001. Slip Op at 10. In certifying a state law question arising out of the Bartell case to the Montana Supreme Court, the federal court stated ‘this court has determined that the Salish Kootenai College, Inc. is a governmental agency See, also Bartell v. American Home Assurance Company, 310 Mont. 276, 49 P.3d 623 (2002).”